540 P.2d 1234

Robert ROSS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Roman Metal Products, Respondent Employer,

The Fidelity & Casualty Company of New York, Respondent Carrier.

No. 11790–PR.

Supreme Court of Arizona, In Banc.

Oct. 1, 1975.
Rehearing Denied Nov. 25, 1975.

Johnson, Hayes & Dowdall by Anthony D. Terry, Dee-Dee Samet, Tucson, for petitioner.

Edward F. Cummerford, Chief Counsel, William C. Wahl, Jr., Former Chief Counsel by R. E. Taylor, Legal Counsel, Phoenix, for respondent, The Industrial Commission of Arizona.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Donald L. Cross, Lawrence H. Lieberman, Phoenix, for respondent employer and respondent carrier.

STRUCKMEYER, Vice Chief Justice.

Petitioner Robert Ross was working as a welder at the time of an industrial accident in which he lost the sight of his right eye. Prior to the industrial accident, petitioner had suffered a nonindustrial injury which caused the formation of a cataract in his left eye, rendering him blind in that eye. Three months after his industrial injury, petitioner underwent surgery at his own expense which, though requiring him to use a corrective lens, restored the sight in his left eye. The Industrial Commission entered an award for a scheduled injury pursuant to A.R.S. § 23–1044(B). Petitioner took certiorari to the Court of Appeals, claiming compensation under A.R.S. § 23–1044(E) as an unscheduled award and an award from the special fund established by A.R.S. § 23–1065 (A)(3), and for medical benefits for the cost of restoring the sight to his left eye.

The Court of Appeals affirmed the Commission and we accepted review. *Opinion of the Court of Appeals,* 22 Ariz.App. 209, 526 P.2d 416, vacated, and the award of the Industrial Commission set aside.

Petitioner first urges that he should have received an unscheduled award under the provisions of A.R.S. § 23–1044(E) rather than a scheduled award under A.R.S. § 23–1044(B). Section 23–1044(B) provides for compensation for permanent and complete loss of sight in one eye without enucleation as 55% of the average monthly wage of the injured employee for 25 months. Payment is not determined by loss of earnings and, in fact, there need be no earning loss.

Section 23–1044(E) provides:

"E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

The Commission's position is that because petitioner was gainfully employed as a welder and had no loss of earning capacity prior to the industrial accident, he had no previous disability and therefore was only entitled to a scheduled award. We have, however, concluded otherwise.

The legislative scheme for compensation for partial disability is found in § 23–1044. Subsection A provides that for temporary partial disability there shall be paid 66⅔% of the difference between the wages earned before the injury and the wages which the injured person is able to earn thereafter. Subsection B arbitrarily fixes certain injuries, such a loss as a thumb, finger, hand, leg, one eye, etc., as a permanent partial disability, directing compensation of 55% of the employee's average monthly wage for the periods of time as therein set forth. Subsection C provides that for all those cases not enumerated in

subsection B, where there is a permanent partial disability, an employee shall receive compensation equal to 55% of the difference between his average monthly wages before the accident and *"the amount which represents his reduced monthly earning capacity."* Subsection D provides that the amount which represents the *reduced monthly earning capacity* for the purposes of subsection C shall be determined by certain enumerated relevant factors. And subsection F provides that for the purposes of subsection C when the physical condition of a claimant becomes stationary the Industrial Commission shall determine the amount which represents *"the reduced monthly earning capacity."*

■ As can be seen, all the cases not enumerated in subsection B (schedule awards) must be compensated pursuant to the provisions of subsections C, D and F, with an amount which represents the employee's reduced monthly earning capacity except those cases enumerated under subsection E, quoted supra. Subsection E does not make any reference to reduced monthly earning capacity. It only requires that the percentage of disability caused by a subsequent injury be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability. Hence, nothing can be found within the language of subsection E which requires that the previous disability be one which reduced the employee's monthly earning capacity. Only a showing of a previous disability, as in the instant case the "loss of an eye" is required and a deduction of that disability from the present disability.

■ The Legislature plainly has concluded that from the loss of an eye or a hand or a foot, as the case might be, there is conclusively presumed a disability which it has required to be deducted from the percentage of the entire disability as it existed at the time of the subsequent injury, probably because the previous loss is a disability which might or might not

affect a person's ability to earn a living. It might or might not reduce his earning capacity. But it must be determined as a percentage of physical disability, which percentage must be deducted from the total physical disability for which the last employer is responsible.

■ Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion to interpret the statute, and courts must follow the meaning of the statute as written. *Arizona State Board of Directors for Junior Colleges v. Phoenix Union High School District*, 102 Ariz. 69, 424 P.2d 819 (1967); *City of Mesa v. Killingsworth*, 96 Ariz. 290, 394 P.2d 410 (1964); *Employment Security Commission of Arizona v. Fish*, 92 Ariz. 140, 375 P.2d 20 (1962); *Marquez v. Rapid Harvest Company*, 89 Ariz. 62, 358 P.2d 168 (1960). And *see McKinney v. Industrial Commission*, 78 Ariz. 264, 278 P.2d 887 (1955), where we said:

"The thought is advanced that possibly when the statute speaks of prior disability prior industrial accident disability only is meant. We cannot agree with this. We cannot read the word 'industrial' into the statute which merely mentions previous disability." 78 Ariz. at 266, 278 P.2d at 888.

We cannot read the words "earning capacity disability" into the statute when only a previous physical disability is referred to.

The respondent Commission relies on *Goodyear Aircraft Corporation v. Industrial Commission*, 89 Ariz. 114, 358 P.2d 715 (1961) and *McKinney v. Industrial Commission, supra*, as authority for requiring an earning capacity disability. We do not believe these cases compel such a conclusion. In *McKinney*, the employee suffered the loss of his right leg while he was a child. He then suffered a 35% functional loss of the use of his left leg in an industrial accident. The Commission awarded McKinney a scheduled award based on the industrial accident, just as the Commission did in the present case. In disagreeing with that award, we said:

"We are unable to perceive how subdivision (e) can be ignored. It makes express provision for apportioning the percentage of disability chargeable to the employer for a subsequent disabling injury. By its terms special provision is made for this special situation. Under such conditions, subdivision (b) has no application." 78 Ariz. at 266, 278 P.2d at 888.

■ The argument advanced in the case before us was also advanced in *McKinney*. In response to the argument that the loss of one leg had caused no earning loss and that therefore there would be no percentage of disability to deduct from his present aggregate disability, we said:

"It seems extremely unrealistic to say that a man whose sphere of employment is industrial labor has no loss of earning power by the loss of a leg, especially when subdivision (e) recognizes it as causing some disability. Under all the conditions it may be great or slight but there would be something, and that something must be determined by the commission from a consideration of all influencing factors." 78 Ariz. at 266, 278 P.2d at 888.

Similarly we think it is unrealistic to say that a man who has lost an eye has no disability, especially since subsection E expressly recognizes it as a disability.

■ Words of a statute are to be given their ordinary common meaning unless it appears from the context or otherwise that a different meaning is intended. A.R.S. § 1–213. The absence of a reference to "earning capacity" in subsection E must have some significance in light of the fact that every other subsection in A.R.S. § 23–1044 which deals with unscheduled awards refers to "earning capacity."

*Goodyear Aircraft Corporation v. Industrial Commission* involved a case of the loss of hearing in both ears. We have re-examined that case and have concluded

that it was improperly decided. Any statements therein contrary to those expressed here are overruled.

Respondent insurance carrier argues that to hold that claimant must be compensated under subsection E will result in striking a "death blow" to the chances of any person with a pre-existing impairment obtaining employment in this State and that surely our Legislature never intended that the Workmen's Compensation Act should be construed to effect such a result. But we assume the Legislature intended the result which comes from applying the statute in the light of the words as used.

■ We have held that an employer takes the employee subject to his existing physical condition when he enters the employment. *Dauber v. City of Phoenix,* 59 Ariz. 489, 130 P.2d 56 (1942). The petitioner, when he entered the service of his employer as a welder had that degree of capacity which enabled him to do the work for which he was hired. That was his total capacity. While it was an impaired capacity as compared with the normal capacity of a healthy man in the possession of all his faculties, and petitioner's total capacity was not as great as it would have been if he had two sound eyes, the capacity which he had was reduced to total incapacity by reason of the injury. There is nothing in our compensation statute requiring employees to be physically perfect in order to come within its provisions.

■ We therefore hold that when petitioner lost the sight of his remaining eye in an accident arising out of and in the course of his employment, he became totally and permanently disabled within the meaning of Arizona's compensation act and was at that moment legally entitled to compensation as an unscheduled award under A.R.S. § 23–1044 E, and his compensation must be determined "by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability."

In the light of our conclusions as to § 23–1044 E, we find it unnecessary to consider petitioner's argument as to the applicability of § 23–1065(A)(3).

Petitioner also contends that he should be entitled to medical benefits for the cataract surgery required to restore the sight to his non-industrially injured eye. His argument is that it would be "grossly unfair" for him to have to pay for his operation when "[t]he medical testimony is clear that the doctor would not have operated on the petitioner but for the industrial accident." But we think it is plain from the transcript his doctor never discussed cataract surgery with him prior to the industrial accident. Dr. John J. Wild, in responding to the question, "Had you ever discussed cataract surgery with Mr. Ross prior to this 11–14–69 injury?" answered, "No, Sir."

■ Had the petitioner undergone the operation prior to the industrial accident, he would have had to personally bear the expenses and, although respondent insurance carrier might have assumed the expense of the operation in order to rehabilitate petitioner had it been aware of this Court's conclusions as to the applicability of A.R.S. § 23–1044 E, this is not a legal reason for imposing such costs upon the carrier. Petitioner fails to direct the Court's attention to statutory authorization for the payment and we have been unable to find any.

■ In light of our decision to set aside the award, petitioner's argument concerning his scars need not be considered. Petitioner did not raise this matter before the Commission. It cannot now be raised on appeal. *Ross v. Industrial Comm.,* 82 Ariz. 9, 307 P.2d 612 (1957).

Award of the Industrial Commission ordered vacated.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.