582 P.2d 188

**ARIZONA COLLEGE OF THE BIBLE, INC., Employer, Account No. 2061360, Appellant,**

v.

**DEPARTMENT OF ECONOMIC SECURITY, formerly known as Employment Security Commission of Arizona, Appellee.**

No. 1 CA–CIV 3148.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 30, 1977.

Rehearing Denied Jan. 31, 1978.

Review Granted Feb. 28, 1978.

Wortman & Harrell, P. C. by William A. Harrell, Phoenix, for appellant.

Bruce E. Babbitt, Atty. Gen. by Frank Sagarino, Asst. Atty. Gen., Phoenix, for appellee.

## OPINION

WREN, Presiding Judge.

This is an appeal from the judgment of the superior court sustaining an order of the appellee, the Employment Security Commission, now the Department of Economic Security, entered on January 18, 1973, requiring the appellant, Arizona College of the Bible, Inc. (ACB), to make wage reports and payments in lieu of contributions under the Employment Security Act

of Arizona, A.R.S. § 23–601 et seq., with coverage beginning January 1, 1972. The specific issue in this appeal is whether ACB is exempt from making unemployment contributions under the provisions of A.R.S. § 23–615.[1] For the reasons stated below, we find it is not.

ACB is an Arizona corporation independent of any church, convention, or association of churches, and is operated solely by its officers and board of directors. The stated purpose of the school is to offer students a biblically oriented education and the subjects offered relate to the Bible and Christian doctrine. General educational subjects such as English and math are not offered.

ACB contends it is exempt from paying unemployment insurance taxes under the provisions of either A.R.S. § 23–615(6)(d)(i) or A.R.S. § 23–615(6)(d)(ii) and (6)(b)(ii).

A.R.S. § 23–615(6)(d) states:

"For [the] purposes of this paragraph, the term 'employment' does not apply to service performed:

(i) In the employ of a church or convention or association of churches, or an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches; . . ."

There is no dispute that ACB operates independently of all churches, conventions and associations of churches. Thus, to qualify for an exemption under this provision it must meet two requirements: (1) that it is operated primarily for religious purposes *and* (2) it is principally supported by a church, convention or association of churches. The Department found that ACB was primarily an educational institution. We find it unnecessary to reach this question since it is clear the school does not satisfy the second requirement. The evidence was insufficient to show that its principal support was derived from a church, convention or association of churches.

In construing statutory language the words of the statute are to be given their ordinary meaning unless it appears from the context or otherwise that a different meaning should control. *Ross v. Industrial Commission*, 112 Ariz. 253, 540 P.2d 1234 (1975). The word "principal" is defined as "chief, leading, most important or considerable; primary; original. Highest in rank, authority, character, importance or degree." Black's Law Dictionary 1355 (rev. 4th ed. 1968). In the present case, forty-nine percent of ACB's revenue is derived from tuition, eight percent from the sale of books and rentals, and forty-three percent from individual and church donations. While the term "principal" or "principally" does not necessarily require a showing that one seeking an exemption under A.R.S. § 23–615(6)(d)(i) derive more than fifty percent of its support from a church, convention or association of churches, the term does require a showing that such organizations contribute the most significant portion of the exemption-seeking entity's support. The evidence in this case makes it clear that the most significant portion of ACB's revenue is derived from student tuition. Further, Paul Eymann, president of ACB, who testified before a hearing officer in the proceedings below, was unable to state what portion of the donation revenue, forty-three percent of the school's total revenue, was contributed by individuals as opposed to churches. He did testify that "most" of the donations were contributed by individuals. We hold this evidence conclusively shows that ACB is not "principally supported" by a church, convention or association of churches and therefore is not entitled to an exemption under the provisions of A.R.S. § 23–615(6)(d)(i).

ACB next contends it is entitled to an exemption because two of its staff members, an administrator and instructor, are licensed ministers who were not in "employ-

---

1. The 1971 version of A.R.S. § 23–615 is applicable to this case. The statute was amended in 1973, Laws 1973, Ch. 164, § 1 and again in 1974 Laws 1974, Ch. 80, § 1. Since the provisions with which we are concerned were not changed, we will refer to the 1974 subsection numerations.

ment" since each was performing duties "in the exercise of his ministry." A.R.S. § 23–615(6)(d)(ii). If this contention is correct the school would not have had four or more covered employees working for some portion of a day in each of twenty different weeks during 1972, as required by A.R.S. § 23–615(6)(b)(ii), and ACB would not be liable for payments under the Employment Security Act.

The Arizona statutory provisions which are pertinent to this portion of our inquiry provide:

§ 23–615 " 'Employment' means any service of whatever nature performed by an employee for the person employing him, . . . and includes:

\* \* \* \* \* \*

6. (b) Service performed after December 31, 1971, by an individual in the employ of a religious, charitable, educational or other organization, but only if the following conditions are met:

(i) The service is excluded from 'employment' as defined in The Federal Unemployment Tax Act solely by reason of § 3306(c)(8) of that act; and

(ii) The organization had four or more individuals in employment for some portion of a day in each of twenty different weeks, whether or not such weeks are consecutive, within either the current or preceding calendar year, regardless of whether they were employed at the same moment of time.

(d) For [the] purposes of this paragraph, the term 'employment' does not apply to service performed:

\* \* \* \* \* \*

(ii) By a duly ordained, commissioned or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order; . . ."

ACB is exempt under the Federal Unemployment Tax Act pursuant to 26 U.S.C. § 3306(c)(8) (1954). Thus our attention is directed to the question of whether the school had in "employment" four or more persons as required under A.R.S. § 23–615(6)(b)(ii) for an education or religious organization having a 3306(c)(8) exemption under the federal act.

Within the relevant time period, January through July 1972, services for ACB were performed by seven persons. Two of the seven, working students of the school, were not included as employees by the Department as they were considered exempt under A.R.S. § 23–617(9). As to the other five, one was a secretary, one a librarian and three worked in instructional or administrative capacities. Unless at least two of these individuals were not in "employment" within the provisions of the Act, as ACB contends they were, the school is liable for unemployment contributions. A.R.S. § 23–615(6)(b)(ii).

The Department found that ACB

"is not associated with any religious body constituting a church or church denomination, and the two ordained ministers in question are not performing services for the school pursuant to an assignment or designation by their ecclesiastical superiors. It is a school operated, supervised, and controlled independent of any church, convention, or association of churches."

Substantial evidence supported this finding. Mr. Eymann testified that the school holds no regular worship services and that ministry services performed by the staff are carried on independent of their status with the school.

 In determining that the ordained ministers in question were not performing services for ACB in the exercise of their ministry, within the meaning of A.R.S. § 23–615(6)(d)(ii), the Department relied on the Internal Revenue Service's interpretation of an identically worded section of the Federal Insurance Contributions Act, 26 U.S.C. § 3121(b)(8)(A). That part of Treasury Regulation on which the Department relied states:

"[S]ervice performed by a minister in the exercise of his ministry includes the ministration of sacerdotal functions and the conduct of religious worship, and the control, conduct, and maintenance of religious organizations . . . under the

authority of a religious body constituting a church or church denomination."

Subsection (3)(i) of that regulation qualifies the provision above by providing:

"If a minister is performing service in the conduct of religious worship or the ministration of sacerdotal functions, such service is in the exercise of his ministry whether or not it is performed for a religious organization."

While we are not bound by the Internal Revenue's interpretation, its interpretation is relevant and entitled to respectful consideration. The Employment Security Act should be liberally construed to include as many types of employment relationships as possible. *Southwest Lumber Mills v. Employment Sec. Commission*, 66 Ariz. 1, 182 P.2d 83 (1947); *Arizona Dept. of Economic Security v. Little*, 24 Ariz.App. 480, 539 P.2d 954 (1975). We believe the Internal Revenue Service construction placed on the comparable federal statute is reasonable because it tends to accomplish a liberal interpretation while at the same time exempting those ordained and licensed ministers whose services comprise those activities traditionally associated with the clergy.

In the present case the evidence indicates that the services performed by the ministers in question did not include the conduct of religious worship or the ministration of sacerdotal functions. For this reason their services must be considered "employment" within the meaning of A.R.S. § 23–615 and ACB is not entitled to an exemption.

The decision of the trial court is affirmed.

SCHROEDER, J., concurring.

EUBANK, Judge, dissenting.

I dissent. I believe that the narrow interpretation of A.R.S. § 23–615(6)(d)(ii) applied by the Department and endorsed by the majority is more restrictive than required by the language of the statute and serves to defeat the legislative purpose of the exemption provided for ministers in the exercise of their ministry. I would hold that a licensed or ordained minister who is a teacher or administrator at ACB is performing service in the exercise of his ministry. Thus, at the time in question, ACB had fewer than four employees for the purposes of A.R.S. § 23–615(6)(b)(ii), and was exempt from payment of unemployment taxes.

The statutory language of A.R.S. § 23–615(6)(d)(ii) has not received an authoritative interpretation from the Arizona Supreme Court. The Department and the majority rely heavily on the Internal Revenue Service's interpretation of an identically worded section of the Federal Insurance Contributions Act, 26 U.S.C. §§ 3101–3126 (1970). Since I disagree with the IRS's interpretation of the statute, I believe the majority's reliance on it is unwarranted.

The term "employment" in the FICA does not include service performed by duly ordained or licensed ministers in the exercise of their ministry. 26 U.S.C. § 3121(b)(8)(A) (Supp. V 1975). The IRS, in Federal Tax Regulation 31.3121(b)(8)–1 (1977), has stated:

(b)(1) [S]ervice performed by a minister in the exercise of his ministry includes the ministration of sacerdotal functions and the conduct of religious worship, and the control, conduct, and maintenance of religious organizations (including the religious boards, societies, and other integral agencies of such organizations), under the authority of a religious body constituting a church or church denomination.

(2) Service performed by a minister in the control, conduct, and maintenance of a religious organization relates to directing, managing, or promoting the activities of such organization. Any religious organization is deemed to be under the authority of a religious body constituting a church or church denomination if it is organized and dedicated to carrying out the tenets and principles of a faith in accordance with either the requirements or sanctions governing the creation of institutions of the faith.

In cases where an ordained minister does not perform sacerdotal functions or conduct religious worship the federal regulation imposes two prerequisites before the minister

qualifies for the exemption: (1) A minister must be performing service in the control, conduct, or maintenance of a religious organization, and (2) that organization must be under the authority of a religious body constituting a church or church denomination. The Department apparently applied both these requirements in this case. Accordingly, I will consider each in turn.

Initially, I question the validity of the requirement that ordained or licensed ministers must work for a religious organization in order to qualify for the exemption. First, the statute does not impose such a condition. Further, since A.R.S. § 23–615(6)(d)(i) exempts service performed in the employ of a religious organization principally supported by a church or convention or association of churches, requiring a minister to work for a religious organization before granting a 6(d)(ii) exemption makes little sense. If the minister is employed by a religious organization, he would fall within the 6(d)(i) exemption, unless the organization is not principally supported by a church or convention or association of churches. I think that subsection 6(d)(ii) was intended by the legislature to include a broader range of activities than service by ordained or licensed ministers in the employ of religious organizations which are not principally supported by a church or convention or association of churches. We do not need to decide this question, however. Even accepting the restrictive interpretation of 6(d)(ii) applied by the Department, ACB still must be considered a religious organization under the facts here.

In several Revenue Rulings, the IRS has amplified its construction of the ministerial exemption found in 26 U.S.C. § 3121. The agency has taken the position that ordained ministers serving as teachers or administrators on the faculties of theological seminaries are performing services in the exercise of their ministry. Necessarily, applying the federal regulation, *supra*, the agency concluded that theological seminaries are religious institutions:

Theological seminaries are religious institutions of learning, their purpose being to train and educate ministers in the propogation of religious principles and ideals of various church denominations.

Rev.Rul. 242, 1955–1 C.B. 490. The same reasoning applies to ACB. ACB's sole purpose is to train and educate professional ministers and religious teachers. Its entire curriculum is directed to preparing its students to perform the various tasks required of specialized Christian ministers, including ministers of music and ministers of Christian education. Accepting, without approving, the Department's first requirement, I believe that the only meaningful distinction in terms of the statutory exemption is between religious and secular organizations, not between religious and educational ones. Viewed in this light, ACB must be considered a religious organization. In my opinion, the Department erred, as a matter of law, in its interpretation of the term "religious organization." ACB is a religious institution within the exemption.

The second factor which the Department found determinative was ACB's lack of affiliation with a recognized church or church denomination. One of the reasons given for denying the 6(d)(ii) exemption was that the ministers were not assigned or designated to perform the services by their ecclesiastical superiors. This is similar to the second requirement in the federal regulations, *supra*. In order to qualify for the exemption in 26 U.S.C. § 3121, a minister must not only be in the employ of a religious organization, but that organization must also be under the authority of a religious body constituting a church or church denomination. Federal Tax Reg. 31.3121 (b)(8)–1.

The purpose of this second requirement is not immediately clear from the language of either the Administrative Decision or the federal regulation. Certainly the statutory language does not impose that prerequisite. For help in deciding whether we should read such a requirement into the Arizona statute, I would look to the policy of the ministerial exemption.

The general policy behind tax exemption of religious organizations is the encourage-

ment and protection of institutions of a religious character, because religious culture is deemed beneficial to the public. *See Walz v. Tax Com'n of City of New York*, 397 U.S. 664, 672–73, 90 S.Ct. 1409, 1413, 25 L.Ed.2d 697, 703–04 (1970); *People v. Haring*, 8 N.Y.2d 350, 357, 207 N.Y.S.2d 673, 677, 170 N.E.2d 677, 680 (1960). *Cf. Verde Valley School v. County of Yavapai*, 90 Ariz. 180, 182, 367 P.2d 223, 225 (1961) (educational institutions are tax exempt because of their value to the public). The exemption of ordained ministers in the exercise of their ministry is a corollary of the general policy. This policy is manifested in A.R.S. § 23–615(6)(d)(ii).

In terms of advancing the general policy, it seems irrelevant whether an ordained minister was assigned to teach at a bible college of his particular denomination by an ecclesiastical superior or whether an ordained minister of an independent church felt a personal call to teach at an independent bible college. Discriminating between ministers of recognized denominations and ministers of independent churches might also raise serious constitutional problems. The interpretation in the IRS regulation clearly favors recognized denominations over independent religious organizations. This, I think, would be impermissible under the first amendment to the United States Constitution. I would therefore reject the second requirement imposed by the Department, and hold that ordained or licensed ministers who are teachers or administrators at ACB are performing such activities in the exercise of their ministry. Since this interpretation of subsection 6(d)(ii) effectively disposes of this case, I would not reach the question of whether ACB falls within the exemption provided in 6(d)(i).

In reaching this conclusion, I am mindful of the general rule that exemptions from taxation are to be strictly construed. *Gietz v. Webster*, 46 Ariz. 261, 267, 50 P.2d 573, 576 (1935); *J. H. Welsh & Son Contracting Co. v. Arizona State Tax Com'n*, 4 Ariz.App. 398, 403, 420 P.2d 970, 975 (1966), *aff'd*, 102 Ariz. 443, 432 P.2d 455 (1967). A tax exemption, however, should not be applied so strictly that the intent of the legislature is defeated. *Verde Valley School v. County of Yavapai, supra; Armco Steel Corp. v. State Tax Com'n*, 221 Md. 33, 155 A.2d 678, 681 (Md.1959); *Princeton Township, Mercer County v. Tenacre Foundation*, 69 N.J.Super. 559, 563, 174 A.2d 601, 604 (1961); *People v. Haring*, 8 N.Y.2d 350, 358, 207 N.Y.S.2d 673, 678, 170 N.E.2d 677, 680 (1960); 85 C.J.S. *Taxation* § 1157 (1954).

My conclusion in this case would promote the legislative policy expressed in the statute and is, I believe, a reasonable interpretation of the language of A.R.S. § 23–615(6)(d)(ii).