645 P.2d 807

**Cecil PULLINS, Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Kitchell Contractors, Inc., Respondent Employer,**

**Glen Falls Insurance Company, Respondent Carrier.**

**No. 15879–PR.**

Supreme Court of Arizona, In Banc.

April 22, 1982.

Rehearing Denied May 25, 1982.

Law Offices of Paul G. Rees, Jr., P. C. by Paul G. Rees, Jr., H. Michael Wright, Tucson, for petitioner employee.

Calvin Harris, Chief Counsel, Phoenix, for respondent The Indus. Commission of Arizona.

Jones, Teilborg, Sanders, Haga & Parks, P. C. by Gregory L. Folger, Phoenix, for respondent employer and respondent carrier.

CAMERON, Justice.

We granted the petition of Cecil Pullins for review of a memorandum decision of the Court of Appeals which affirmed a decision of the administrative law judge that the prior loss of sight in one eye was not an earning capacity disability. We have jurisdiction pursuant to A.R.S. § 12–120.24 and Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

The facts necessary for a determination of this case are as follows. During childhood, Pullins had sustained an injury to his right eye resulting in blindness in that eye. On 1 October 1971, Pullins suffered an industrial injury in the course of his employment as a carpenter when wet cement fell into his left eye. After the accident, petitioner was diagnosed as having acute iritis and secondary glaucoma in the left eye, as well as acute chorioretinitis. His employer's carrier eventually determined that Pullins suffered a 75% functional impairment of his left eye.

The employer's insurance carrier accepted the claim for benefits and Pullins received "unscheduled" disability benefits for eight years, until 10 October 1979. At that time, the carrier informed Pullins of a change in claim status that would terminate temporary compensation and active medical treatment benefits. Pullins was notified that in place of the earlier benefits per month, he would receive a "scheduled" award in the amount of $9,375, payable at $500 per month for 18.75 months pursuant to the scheduled awards provided for in A.R.S. § 23–1044(B).

At a hearing before the administrative law judge, the petitioner urged that his pre-existing non-industrial disability of blindness in one eye had resulted in a loss of earning capacity, and therefore his claim for compensation should be continued as "unscheduled" under A.R.S. § 23–1044(C). The administrative law judge found otherwise and ruled that the respondent carrier was correct in contending Pullins' non-industrial loss of sight in one eye did not result in an earning capacity disability. In this regard, the administrative law judge evidently relied, as did the Court of Appeals, upon Pullins' testimony:

"Q How long had you been a carpenter? Let's ask that first.

"A I'd say around 12, 15 years, maybe 18 years.

"Q * * * [H]ow much or how long during that time were you a union member?

"A Oh, I'd·say a good ten years.

"Q Would that be the ten years prior to working for [the respondent employer]?

"A Yeah.

"Q And during that time you earned union scale wages?

"A Right.

"Q And from what you have said earlier on direct examination, before the in-

jury in October of 1971, the right eye didn't give you any problems in your work as a carpenter?

"A That's right.

"Q As far as your employment was concerned?

"A That's absolutely right."

■ Under the Arizona Workman's Compensation Act, awards for certain industrial injuries, such as the loss of fingers, hands, feet, eyes, etc., are "scheduled." A.R.S. § 23–1044(B). Scheduled injuries are compensated according to statute for a stated period of time as specified regardless of the effect on the workman's earning capacity. By adopting scheduled awards, the legislature has sought to add a degree of certainty to the amount and duration of compensation an injured workman will receive when he suffers an injury of a specified nature. When a workman suffers an injury not enumerated in subsection B, his award is said to be "unscheduled." Unlike a scheduled award, an unscheduled award is not limited in duration and will end only when the disability is removed. A.R.S. § 23–1044(C). A pre-existing injury may operate to convert a subsequent scheduled disability into an unscheduled disability if the pre-existing injury resulted in a loss of earning capacity. *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978). If the pre-existing injury is an industrially related scheduled injury, then there is a conclusive presumption that the pre-existing injury resulted in a loss of earning capacity. If the pre-existing injury was a non-industrially related scheduled injury, then there is a rebuttable presumption that it resulted in an earning capacity disability. *Borsh v. Industrial Commission*, 127 Ariz. 303, 620 P.2d 218 (1980). We have stated:

" * * * [W]here there is a prior scheduled industrially related injury, the Commission may not ignore the previous injury when the workman suffers a second industrial injury. * * * In the case of a prior non-industrially related injury which would have been a scheduled award had it been industrially related, there is a presumption that the prior inju-

ry had an effect on the earning capacity of the workman at the time of the second injury although this presumption can be overcome * * *." *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 544, 490 P.2d 423, 425 (1971). See also Workmen's Compensation: Unscheduled Awards for Second Injuries, 21 Ariz.L.Rev. 255 (1979) [hereinafter cited as Second Injuries].

The reason for allowing the presumption of prior earning capacity disability to be rebutted was discussed in *Alsbrooks*, supra:

" * * * We do not believe that any physical impairment, the result of a prior non-industrial accident, is a 'previous disability' for the purposes of Paragraph E unless there is some evidence, no matter how slight, that it is also an earning capacity disability. To hold that after a non-industrial injury, any physical impairment will convert a second scheduled injury into an unscheduled injury, would, in effect, do completely away with all scheduled injury awards since it is a rare person indeed who does not have some previous physical impairment as a result of some prior injury." Id. at 483, 578 P.2d at 162.

■ In the instant case, while it is recognized that a presumption of earning capacity disability resulted from the prior non-industrial injury, the administrative law judge found that the presumption was rebutted and that petitioner suffered no loss of earning capacity as the result of the complete blindness in his right eye.

" * * * According to *Ronquillo v. Industrial Commission*, (citation omitted) there is a rebuttable presumption that a pre-existing scheduled type injury is an injury that adversely [a]ffects earning capacity and as such would cause a subsequent otherwise scheduled industrial injury to be unscheduled. However, the presumption is not conclusive and *Alsbrooks* * * * requires that at time of second injury the previous disability must have been an earning capacity disability. The evidence establishes that until after applicant's industrial injury, the first impairment to applicant's right eye had in no way af-

fected applicant's earning capacity ability as reflected in the fact that he was in no manner incapacitated as a carpenter and was earning in excess of the maximum permitted average monthly wage at the time of his industrial injury. * * * " Industrial Commission Decision, I.C.A. Claim No. 1/3–86–63 at p. 5.

We do not agree. In *Ronquillo, supra,* we held that the Commission could not ignore the previous injury to the workman's right finger because it was industrially related. In *Wollum v. Industrial Commission,* 100 Ariz. 317, 414 P.2d 137 (1966), we held that the previous non-industrially related amputation of the distal phalanx of the left index finger did not result in a loss of earning capacity. In both cases, the prior disabilities were minimal, the difference being that in *Ronquillo* the prior injury to the finger was industrially related and in *Wollum* it was not. *Ronquillo, supra; Wollum, supra.* In the instant case, even though the prior disability is non-industrially related, it is different from *Wollum, supra,* in the magnitude of the injury, and we believe the magnitude of the injury itself can operate to make the presumption conclusive. There are certain disabilities, such as the loss of an arm or leg, that no matter how well the worker has adapted to the disability, are so severe that they must be considered an earning capacity disability, regardless of whether they are industrial or non-industrial in origin. The loss of an eye has to be one of these disabilities. See Second Injuries, 21 Ariz.L.Rev. 255 (1979). Although in *Alsbrooks, supra,* we overruled *Ross v. Industrial Commission,* 112 Ariz. 253, 540 P.2d 1234 (1975), we agree with the statement in *Ross* that "it is unrealistic to say that a man who has lost an eye has no disability." 112 Ariz. at 256, 540 P.2d at 1237. As we have also previously noted:

"It seems extremely unrealistic to say that a man whose sphere of employment is industrial labor has no loss of earning power by the loss of a leg, especially when subdivision (e) recognizes it as causing some disability." *McKinney v. Industrial Commission,* 78 Ariz. 264, 266, 278 P.2d 887, 888 (1955).

In the instant case, even though the petitioner has adapted to the loss of his eye to the point that he has been able to function adequately and even competitively, he still has lost a physical function of such enormity that it detracts from the body's total efficiency in ordinary employment, as well as the ordinary pursuits of life. The presumption that the loss of the eye resulted in an earning capacity loss may not be rebutted by petitioner's adaption to such loss. It cannot be said that there is not some impairment, even though minimal, of petitioner's earning capacity.

The opinion of the Court of Appeals is vacated, and the award is set aside.

GORDON, V.C.J., and FELDMAN, J., concur.

HAYS, Justice, dissenting:

I dissent.

In the majority opinion, we once again find an appellate court invading the fact-finding province of a lower tribunal.

I have no quarrel with the law cited in the majority opinion which indicates that a preexisting nonindustrial injury will be deemed to convert a scheduled injury to an unscheduled injury only if the preexisting injury resulted in a loss of earning capacity. Also, there is a rebuttable presumption that a preexisting scheduled-type nonindustrial injury causes a loss of earning capacity.

Based on the employee's own testimony that despite the loss of the sight in his right eye he had always been able to do "any job," the administrative law judge found the presumption rebutted. The majority, however, casts aside the employee's testimony and returns to the previously overruled *Ross v. Industrial Commission,* 112 Ariz. 253, 540 P.2d 1234 (1975), for support. With this position I cannot agree.

HOLOHAN, Chief Justice, concurring:

I concur in the dissent of Justice Hays.