682 P.2d 457

**CONSOLIDATED ROOFING & SUPPLY CO., INC., an Arizona corporation, Plaintiff-Appellee,**

v.

**Veronica GRIMM, a widow, on behalf of herself, and on behalf of her community interests with Richard C. Grimm, deceased, Defendant-Appellant.**

**No. 1 CA–CIV 6289.**

Court of Appeals of Arizona, Division 1, Department C.

April 17, 1984.

454

Marvin Johnson, P.C. by Charles Hultstrand, Phoenix, for plaintiff-appellee.

Rowe & Scoggin by John B. Rowe, Phoenix, for defendant-appellant.

## OPINION

EUBANK, Judge.

The primary issue in this case is whether appellant Veronica Grimm and her deceased husband Richard Grimm (the Grimms) are liable for the indebtedness of G & K Roofing Company (G & K) to appellee Consolidated Roofing & Supply Company, Inc. (Consolidated) pursuant to a guaranty signed by Richard Grimm.

Consolidated is a roofing materials supplier which provided a line of credit to G & K from October 5, 1978, until approximately November, 1980. Richard Grimm and George Kriner were the original stockholders and principal owners of G & K, a roofing subcontractor. On October 5, 1978, Grimm and Kriner executed a personal guaranty for credit extended to G & K by Consolidated.

Grimm sold his stock in G & K in November of 1979. However, although he had terminated his ownership interest and management function in G & K, he did not revoke his personal guaranty for G & K's indebtedness to Consolidated.

G & K found itself in serious financial trouble in 1980, which was caused in part by flood damage at its place of business in Phoenix. By late fall, G & K owed Consolidated over $27,000. On November 7, 1980, Consolidated filed suit to recover this debt in Maricopa County Superior Court against G & K, George Kriner, the Grimms, and United States Fidelity and Guaranty Company. (United States Fidelity and Guaranty Company, which is not a party to the appeal, had issued G & K's performance bond. The trial court entered summary judgment in its favor on the grounds that its bond had already been exhausted by a judgment in favor of another creditor of G & K.)

In November of 1980, both G & K and George Kriner filed for bankruptcy. The United States Bankruptcy Court lifted its automatic stay of proceedings against defendants G & K and Kriner for the purpose of allowing litigation to proceed against defendant Grimms in the Maricopa County court action. Summary judgment was granted in favor of Consolidated and against the Grimms for $27,686.01, plus interest, costs and attorney's fees. Following the trial court's consideration of several motions not relevant to this appeal, an amended judgment in favor of Consolidated was entered on September 24, 1981. The Grimms filed a timely appeal from that judgment.

The Grimms contend that the judgment should be reversed because: (1) the guaranty was limited to $5,000, (2) Consolidated's negligence discharged Richard Grimm's obligation, (3) the guaranty cannot be enforced against the marital community, and (4) factual disputes precluded entry of summary judgment.

We consider first whether the guaranty limits the Grimms' liability to $5,000. The Grimms point out that the guaranty was included on the same document as a corporate resolution authorizing G & K's credit application to Consolidated, and that the credit application expressly limited G & K's credit line to $5,000. They then argue that the guaranty incorporated this maximum credit line. We observe, however, that the corporate resolution itself does not purport to limit the indebtedness that G & K could incur to Consolidated.[1] The credit applica-

---

1. The corporate resolution provided in part:

George William Kriner and Richard C.

tion was a separate document. Further, G & K did not request a restricted credit line on its application. Rather, Consolidated initially set the $5,000 limit itself.

The guaranty executed by George Kriner and Richard Grimm provides:

> In consideration of advances, and/or extensions of credit for merchandise sold and delivered, to the Applicant above-named by CONSOLIDATED ROOFING AND SUPPLY CO., hereinafter called "CONSOLIDATED ROOFING", and as an inducement to make such advances and/or sales and deliveries, the undersigned, jointly and severally, unconditionally guarantee the payment of any and all sums of money as are now, or at any time hereafter may be, owing to CONSOLIDATED ROOFING by said Applicant, on account of such advances and/or sales and deliveries, in accordance with the terms, conditions and agreements contained in this Application, together with such costs and expenses, including reasonable attorney's fees, as may be incurred by CONSOLIDATED ROOFING in the enforcement of this Guaranty whether or not suit is commenced. The undersigned hereby waive notice of acceptance hereof, amount of advances and/or sales and deliveries, terms of credit, date of shipment or delivery, extensions of time of payment and/or default in payment further waive legal proceedings by CONSOLIDATED ROOFING against said Applicant.
>
> This is intended to be and is a continuing guaranty and shall not be revoked except by written notice to CONSOLIDATED ROOFING not to make further advances and/or sales and deliveries on the security of this Guaranty and until the expiration of five (5) days after such notice shall have been received by CONSOLIDATED ROOFING by registered mail, return receipt requested. Any such revocation shall be effective only with respect to advances made and/or merchandise shipped or delivered after the expiration of said five-day period, and shall not affect, in any respect, liability incurred by the undersigned prior to that time.

■ We find that the express language of the guaranty provides for a continuing personal guaranty by Kriner and Grimm for G & K's credit purchases from Consolidated. The guaranty contemplates future purchases without limit as to the amount of such purchases.

■ A contract of guaranty will be strictly construed to limit the liability of the guarantor. *See Cushman v. National Surety Corp. of New York*, 4 Ariz.App. 24, 27, 417 P.2d 537, 540 (1966). A person may, however, make himself liable for the future debts of another. *Giovanelli v. First Federal Savings and Loan Ass'n*, 120 Ariz. 577, 582–583, 587 P.2d 763, 768–769 (App.1978). Although the Grimms argue that Mr. Grimm's understanding in executing the guaranty was that he was incurring liability for a maximum sum of $5,000, this alleged understanding is not reflected in the written guaranty and is therefore not controlling. Where the language of a contract is clear and unambiguous, it must be given effect as it is written. *Hadley v. Southwest Properties, Inc.*, 116 Ariz. 503, 506, 570 P.2d 190, 193 (1977); *Hofmann Co. v. Meisner*, 17 Ariz.App. 263, 266, 497 P.2d 83, 86 (1972). We find the language of the guaranty to be unambigu-

Grimm, the duly elected acting President and Secretary, respectively, of G & K Roofing Co., Inc., do hereby certify that a meeting of the Board of Directors of said corporation, at which a quorum was present, was duly and regularly held on August 15, 1978, at which meeting the following resolution was adopted by majority vote, and remains in full force and effect: RESOLVED, that this corporation be, and the same is hereby, authorized and empowered, from time to time, to obtain advances and/or obtain merchandise on credit from Consolidated Roofing & Supply Co., Phoenix, Arizona, and in connection therewith, to make such statements, agreements and credit applications as Consolidated Roofing & Supply Co. may require; and that any one or more of the officers of this corporation be, and they are hereby, authorized and empowered to execute and deliver to Consolidated Roofing & Supply Co., on behalf of this corporation, any and all documents necessary to effectuate the foregoing, including credit applications.

ous. It does not limit Mr. Grimm's liability to $5,000.

■■■ The Grimms also argue that a factual issue was raised with respect to whether or not Consolidated knew that Mr. Grimm had terminated his ownership in G & K. This question, however, is not material to Mr. Grimm's contractual obligation because this obligation was not conditioned upon his remaining an owner or officer of G & K. Indeed, no evidence was presented indicating that Mr. Grimm properly terminated his contractual obligation. He did not revoke the guaranty by written notice to Consolidated, which is the manner expressly provided for in the guaranty. We conclude, therefore, as a matter of law that the sale of his shares in G & K and his withdrawal from participation in the company did not terminate his liability under the contract. *See Valley National Bank v. Shumway*, 63 Ariz. 490, 496, 163 P.2d 676, 678–679 (1945).

■■■ The Grimms next contend that Mr. Grimm's obligation as a guarantor was discharged because Consolidated was negligent and thereby increased the risk Mr. Grimm had undertaken. Their argument is based upon A.R.S. § 44–2573 (U.C.C. § 3–606) which provides that the holder of an instrument discharges any party to that instrument to the extent that without that party's consent it releases or suspends the enforcement of any rights it may have against a third party.[2] The Grimms argue that the guaranty was discharged because Consolidated delayed in seeking to recover against G & K's performance bond until that bond was exhausted by other creditors, thereby increasing their liability. They also argue that their liability was increased by Consolidated's failure to file materialmen's liens against various general

contractors for whom G & K was a subcontractor.

A.R.S. § 44–2573 (U.C.C. § 3–606) is part of the Arizona Commercial Code governing commercial paper. *See* A.R.S. § 44–2501 (U.C.C. § 3–101). It is applicable to persons who are parties to negotiable instruments. A.R.S. § 44–2502(A)(5) (U.C.C. § 3–102). A negotiable instrument is defined in A.R.S. § 44–2504(A) (U.C.C. § 3–104) which provides:

A. Any writing to be a negotiable instrument within this article must:

1. Be signed by the maker or drawer; and

2. Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article; and

3. Be payable on demand or at a definite time; and

4. Be payable to order or to bearer.

The guaranty signed by the Grimms was not made payable to order or to the bearer nor was it for a sum certain. It was therefore not within the definition of a negotiable instrument. It was a continuing guaranty which is not a transaction covered by this provision of the code. *See EAC Credit Corp. v. King*, 507 F.2d 1232, 1238 (5th Cir.1975); *Liberty Bank v. Shimokawa*, 2 Hawaii App. 280, 632 P.2d 289, 291–292 (1981), *cert. denied* 454 U.S. 1146, 102 S.Ct. 1009, 71 L.Ed.2d 299 (1982). Nor was it a guaranty of a specific negotiable instrument, and therefore A.R.S. § 44–2553 (U.C.C. § 3–416) does not apply. Consequently, we find no merit to the Grimms' argument that A.R.S. § 44–2573 (U.C.C. § 3–606) mandates a discharge of their obligation to Consolidated.

**2.** A.R.S. § 44–2573 (U.C.C. § 3–606) provides in part:

A. The holder discharges any party to the instrument to the extent that without such party's consent the holder:

1. Without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person,' except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary ....

The Grimms also argue that Consolidated should not have been awarded the full amount of G & K's indebtedness, because Consolidated "could" have filed materialmen's liens and if so, such liens should have been applied as a set-off against the Grimms' obligation. The claim of set-off is an affirmative defense for which the Grimms had the burden of proof. *See Wagstaff v. Remco Inc.*, 540 P.2d 931, 934 (Utah 1975). *Cf. Sutton v. Roth, Wehrly, Heiny, Inc.*, 418 N.E.2d 229, 232 (Ind.App.1981); *Foster v. Jackson*, 339 So.2d 865 (La.Ct.App.1976). Once Consolidated had made a prima facie showing that there were no genuine issues of material fact with respect to its entitlement to enforce the guaranty, the burden shifted to the Grimms to produce sufficient affidavits to show that there was a triable issue of material fact. *Portonova v. Wilkinson*, 128 Ariz. 501, 502, 627 P.2d 232, 233 (1981). If the opponent to a motion for summary judgment does not respond with specific facts where the moving party is specific, judgment should be entered against him. *See Markel v. Transamerica Title Ins. Co.*, 103 Ariz. 353, 358, 442 P.2d 97, 102 (1968), *cert. denied* 393 U.S. 999, 89 S.Ct. 484, 21 L.Ed.2d 463 (1968). Here the Grimms failed to present any evidence of the existence of materialmen's liens and therefore failed to raise any evidence of a material fact with respect to their alleged entitlement to a set-off.

We turn next to the question of whether the judgment was properly entered against both Richard and Veronica Grimm and their marital community. A.R.S. § 25–214(C)(2) provides:

> C. Either spouse separately may acquire, manage, control or dispose of community property, or bind the community, except that joinder of both spouses is required in any of the following cases:
> * * * * * *
>
> 2. Any transaction of guaranty, indemnity or suretyship.

It is uncontested that Veronica Grimm did not sign the guaranty nor authorize her husband to sign on her behalf. Nevertheless, the trial court concluded that there had been a "joinder" for purposes of A.R.S. § 25–214. In reaching this conclusion, the court relied upon the following language in *Hamada v. Valley National Bank*, 27 Ariz.App. 433, 555 P.2d 1121 (1976):

> The husband, as a member of the community, has no power under the law without the knowledge and consent of his wife, to use community assets to guarantee the payment of a debt of a stranger to the community, it deriving no benefit therefrom. [Citation omitted]. The community is not liable for a debt contracted by the husband in no way connected with the community and from which the community receives no benefit. [Citation omitted]. This law has now been codified in A.R.S. Sec. 25–214(C)(2) which requires both spouses to join in any transaction of guaranty, indemnity or suretyship.

27 Ariz.App. at 436, 555 P.2d at 1124.

The trial court found that an underlying purpose of the statute, as construed in *Hamada*, is to prevent one spouse from obligating community property to guaranty the debt of a stranger to the community where the community derives no benefit. The court then apparently held that if, on the other hand, the community benefits from a guaranty, the purposes of the statute would not be served by requiring that both spouses sign the guaranty. Thus, since G & K's credit line with Consolidated enabled G & K to pay Richard Grimm a salary, thereby benefiting the community, the trial court concluded that there was sufficient "joinder" to bind the community. We disagree.

Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion to interpret the statute, and courts must follow the statute as written. *Ross v. Industrial Commission*, 112 Ariz. 253, 256, 540 P.2d 1234, 1237 (1975); *O'Malley Lumber Company v. Riley*, 126 Ariz. 167, 169, 613 P.2d 629, 631 (App.1980). Words of a statute are to be given their ordinary

common meaning unless it appears from the context or otherwise that a different meaning is intended. A.R.S. § 1–213. *See also Ross, supra,* 112 Ariz. at 256, 540 P.2d at 1237.

A.R.S. § 25–214(C) provides that "joinder" of both spouses is necessary in two particular types of transactions, i.e., real property transactions and contracts of guaranty, indemnity or suretyship. "Joinder" refers to "... joining of two or more parties in a common transaction ...." Webster's Third New International Dictionary (1969). In construing the word "join" as used in statutes requiring one or both spouses to "join in" a property conveyance, other jurisdictions have held that it means to join in the execution of the conveyance. *See Hannah v. Tennant,* 92 N.M. 444, 446, 589 P.2d 1035, 1037 (1979); *Collins v. Cornwell,* 131 Ind. 20, 21–22, 30 N.E. 796, 797 (1892); *Nolan v. Moore,* 96 Tex. 341, 72 S.W. 583 (1903). Further, in discussing A.R.S. § 25–214(C)(2), this court held in *GAF Corp. v. Diamond Carpet Corp.,* 117 Ariz. 297, 300, 572 P.2d 125, 128 (App. 1977), that:

> Since the community would not be bound by a guarantee executed by one spouse during marriage without the joinder of the other, policy dictates it should not be bound by a premarital guarantee signed by one spouse where the liability from that guarantee does not arise until after marriage.

117 Ariz. at 300, 572 P.2d at 128.

Consolidated has called to our attention the case of *Reid v. Cramer,* 24 Wash.App. 742, 603 P.2d 851 (1979), in which the Washington Court of Appeals interpreted a statute which requires the joinder of spouses in transactions involving real property. While the wife had not signed the real estate contracts, the court held that she was estopped from disaffirming the contracts when she later found them to be unprofitable, because she had ratified them by accepting their benefits. We do not, however, find *Reid v. Cramer* persuasive authority with respect to A.R.S. § 25–214(C). While there may be circumstances where a spouse may be estopped from disaffirming a contract, we are constrained from adopting a rule which would preclude a spouse from disaffirming any contract from which the community has received benefits. To adopt such a rule would effectively emasculate the requirements of A.R.S. § 25–214(C).

 We find that the plain meaning of A.R.S. § 25–214(C)(2) requires that both spouses must execute a guaranty in order to bind the community. Consequently, the guaranty to Consolidated, which was executed only by Richard Grimm, cannot be enforced against his wife or the marital community. His separate estate is, of course, liable on the guaranty. We find no facts in the instant case which would justify estoppel. Since only Mr. Grimm's signature appeared on the guaranty, Consolidated should have been aware that the marital community was not bound.

 The Grimms' final argument is essentially a general assertion that there were material issues of fact precluding summary judgment. It is a well established principle of law that summary judgment may not be granted where disputed facts exist which, if true, could affect the final judgment. *See Corral v. Fidelity Bankers Life Ins. Co.,* 129 Ariz. 323, 326, 630 P.2d 1055, 1058 (App.1981). In reviewing the decision granting summary judgment, this court must review the evidence in a light most favorable to the non-moving party. *Portonova v. Wilkinson,* 128 Ariz. at 502, 627 P.2d at 233. Since the factual issues relied upon by the Grimms are not material to Consolidated's right to judgment in this matter, we find no merit in this argument.

 In summary, we find that the trial court correctly held that the guaranty contract in question provided for a continuing guaranty of G & K's credit purchases from Consolidated and was not limited to $5,000. We further conclude that the trial court correctly held that A.R.S. § 44–2573 (U.C.C. § 3–606) was inapplicable to the guaranty. However, we find that the judg-

ment could be entered only against Richard Grimm and not against Veronica Grimm and their marital community. Accordingly, this matter is affirmed in part and reversed in part; it is remanded to the trial court for proceedings in accordance with this decision and for entry of judgment against Richard Grimm, solely, acting on behalf of himself and his separate property.

CORCORAN, P.J., and JACOBSON, C.J., concur.