750 P.2d 25

Angie E. ALVA, Petitioner,

v.

The **INDUSTRIAL COMMISSION OF ARIZONA,** Respondent,

**The Donut Company,**
**Respondent Employer,**

**State Compensation Fund,**
**Respondent Carrier.**

No. 1 CA–IC 3504.

Court of Appeals of Arizona,
Division 1, Department C.

March 26, 1987.

Spencer K. Johnston, Phoenix, for petitioner.

The Industrial Commission of Arizona by Dennis P. Kavanaugh, Chief Counsel, Phoenix, for respondent.

State Compensation Fund, Robert K. Park, Chief Counsel by Robert T. Wilson, Phoenix, for respondent Employer and, Carrier.

## OPINION

**CORCORAN, Judge.**

This is a special action review of an Industrial Commission award finding that petitioner Angie Alva (claimant) had a scheduled permanent partial impairment due to a 20% physical functional loss of the use of her right upper extremity. We must determine whether: (1) the administrative law judge (ALJ) correctly determined that claimant has a scheduled disability; and (2) whether the ALJ properly refused to issue a subpoena for a physical therapist who claimant had visited for therapy.

Claimant was injured in an industrial accident, and her claim was accepted by the carrier. Following multiple surgeries to her right hand and wrist, the carrier issued a notice of claim status which terminated temporary compensation and active medical treatment and stated that claimant's condition was stationary with permanent disability. Claimant timely protested this notice. Claimant also timely protested the carrier's notice of permanent disability benefits which indicated that she had a permanent *scheduled* disability to her right major arm.

A hearing regarding her protests was held. Pursuant to stipulation, the only issue to be determined was whether claimant had a scheduled or unscheduled impairment. Two board-certified orthopedic surgeons and claimant testified at the hearing. The ALJ declined to subpoena claimant's physical therapist. In response to claimant's counsel's renewed request for a subpoena during the hearing, the ALJ stated that the testimony would be cumulative, and would not "carry more weight" than a physician's testimony. Claimant's physician, Leonard S. Bodell, M.D., testified that she should have surgery on her shoulder, but he also testified that "her [shoulder] abduction is essentially normal. There are a few degrees of limitation." Dr. Bodell also stated that claimant's left little finger was amputated when she was 4 years old, so that she lacks two phalanges on that pinkie. John H. Ricker, M.D., who examined claimant on behalf of the State Compensation Fund, testified that she did not require further medical treatment and confirmed his April 4, 1985 post-examination report that "[h]er shoulder motion is essentially normal except for slight loss of internal rotations." Claimant also testified as to her pain and restriction in shoulder movement.

Exercising his prerogative to resolve conflicting medical testimony, *Field v. Industrial Comm'n*, 128 Ariz. 425, 626 P.2d 155 (App.1981), the ALJ, following Dr. Ricker's opinion, determined that claimant's condition was "medically stationary requiring no further treatment, that she sustained no impairment of the involved shoulder, and her permanent impairment is limited to the right upper extremity, i.e., a 20% physical functional loss of use thereof."

The finding of a scheduled disability was affirmed by the Industrial Commission on December 19, 1985. This special action petition followed.

### I. *Scheduled Disability*

■ The first issue presented for review is whether the ALJ properly determined that claimant has a scheduled disability. Generally a preexisting non-industrial injury, which would have been a scheduled injury if it were industrially related, unschedules a subsequent industrial, scheduled injury if the preexisting injury resulted in an earning capacity disability. *Pullins v. Industrial Comm'n*, 132 Ariz. 292, 645 P.2d 807 (1982). To argue that her industrial injury should be unscheduled, claimant relies on our supreme court's statement that "[i]f the pre-existing injury was a non-industrially related scheduled injury, then there is a rebuttable presumption that it resulted in an earning capacity disability." 132 Ariz. at 294, 645 P.2d at 809. Under A.R.S. §§ 23-1044(B)(5) and (7), claimant's non-industrial loss of more than one phalanx of her left little finger would have been a scheduled injury, if it had been industrially related. Claimant asserts that this preexisting injury and the rebuttable presumption enunciated in *Pullins* were sufficient to unschedule the later injury, absent a rebuttal of the presumption. We disagree.

In *Alsbrooks v. Industrial Comm'n,* our supreme court stated:

We do not believe that any physical impairment, the result of a prior non-industrial accident, is a "previous disability" for the purposes of Paragraph E [A.R.S. § 23–1044] unless there is some evidence, no matter how slight, that it is also an earning capacity disability. To hold that after a non-industrial injury, any physical impairment will convert a second scheduled injury into an unscheduled injury, would, in effect, do completely away with all scheduled injury awards since it is a rare person indeed who does not have some previous physical impairment as a result of some prior injury.

118 Ariz. 480, 483, 578 P.2d 159, 162 (1978).

*Pullins* did not overrule *Alsbrooks* or specifically disagree with the quoted language. *Alsbrooks* evinces a recognition that there is a difference between an earning capacity disability and a physical impairment which has no effect on the ability to earn or to engage in gainful employment. In *Pullins,* although the opinion spoke in terms of a rebuttable presumption, it also stated that "we believe the magnitude of the injury itself can operate to make the presumption conclusive. There are certain disabilities ... [that] are so severe that they must be considered an earning capacity disability. The loss of an eye has to be one of these disabilities." 132 Ariz. at 295, 645 P.2d at 810. Thus, the carrier could not rebut the presumption that Pullins' loss of an eye resulted in an earning capacity disability, thereby unscheduling his industrial injury.

At the other end of the spectrum from *Pullins* are cases in which it is obvious that a preexisting injury does not create an earning capacity disability, considering the nature of the claimant's work. In those cases, a claimant's preexisting, non-industrial injury should not create a presumption of lost earning capacity and thus not serve to unschedule a subsequent scheduled industrial injury. This is such a case. Claimant's preexisting injury is the amputation of two phalanges of her left little finger when she was 4 years old, and her industrial injury is to her right arm. Claimant worked as a waitress at the time of her industrially-related injury. Without some showing by claimant, we cannot presume that the loss of part of a little finger affected claimant's earning capacity at the time she suffered her industrial injury.

Claimant concedes that she made no attempt at her hearing to prove that the loss of part of her left little finger resulted in any loss of earning capacity. As claimant's attorney conceded at oral argument, the record is devoid of any evidence which would indicate or from which we could infer any loss of earning capacity. Based on these facts, common sense dictates that the presumption that a previous non-industrial, scheduled-type injury results in a loss of earning capacity should not apply. We find that the burden of going forward with evidence of loss of earning capacity or lack thereof does not shift to the carrier in cases in which a preexisting non-industrial injury is so inconsequential as to have no effect on earning capacity.

Claimant's attorney also argues that she has an unscheduled injury because the industrial accident caused injury to her right shoulder as well as to her arm. A shoulder injury is not scheduled. A.R.S. § 23–1044(B); *Low v. Industrial Comm'n,* 140 Ariz. 52, 680 P.2d 188 (App.1984). As noted previously in this opinion, both medical experts testified that while claimant suffered minor loss of motion in her right shoulder, her shoulder motion was "essentially normal." Thus, the record supports the ALJ's finding that there is no impairment to the shoulder.

## II. *Physical Therapist's Testimony*

The second issue presented for our review is whether the ALJ properly exercised his discretion when he refused to subpoena claimant's physical therapist. Claimant's attorney argues that the physical therapist's testimony would corroborate Dr. Bodell's testimony that claimant needs further medical care, and that claimant is entitled to have this testimony presented. We disagree for several reasons.

First, Dr. Bodell and claimant both testified regarding claimant's therapy. In addition, the ALJ has discretion to refuse to issue a subpoena under certain circumstances. Interpreting A.C.R.R. R4–13–141(A), Arizona courts have determined that the ALJ may ask the party who requests the subpoena to present a written statement stating the substance of the witness's expected testimony. The hearing officer may "refuse issuance of a subpoena only when the requested statement is not forthcoming or where it is clearly shown in the statement itself that the solicited testimony would not be material and necessary. If the testimony would merely reiterate material in a medical report it is of course not material or necessary." *Reinprecht v. Industrial Comm'n*, 27 Ariz.App. 7, 10, 550 P.2d 654, 657 (1976); *see also K–Mart Corp. v. Industrial Comm'n*, 139 Ariz. 536, 679 P.2d 559 (1984).

In the present case, claimant's attorney filed the requested written statement, and the ALJ determined that the physical therapist's testimony would be cumulative and would not be more probative than the orthopedic surgeons' testimony regarding claimant's medical condition. The ALJ's discretion in this regard is quite broad, and we agree with his determination.

Claimant's attorney stresses that the physical therapist's testimony would be corroborative of Dr. Bodell's testimony, rather than just cumulative. "Corroborative evidence tends to corroborate or to confirm, whereas cumulative evidence merely augments or tends to establish a point already proved by other evidence." *State v. Kennedy*, 122 Ariz. 22, 26, 592 P.2d 1288, 1292 (App.1979); *State v. Turner*, 92 Ariz. 214, 375 P.2d 567 (1962). Generally, cumulative evidence, although relevant, may be excluded. Rule 403, Arizona Rules of Evidence. We find the ALJ's determination that the evidence would be cumulative persuasive.

Assuming arguendo that the testimony would be corroborative instead of just cumulative, we still agree with the ALJ for two reasons. The physical therapist's testimony would not have eliminated the medical conflict. Further, claimant had every right and opportunity to have the physical therapist attend the hearing and pay the costs herself, instead of requesting the ALJ to subpoena the therapist, which would have required the Commission to pay the costs. *See E.S. Kelton Contr. Co. v. Industrial Comm'n*, 123 Ariz. 485, 487, 600 P.2d 1117, 1119 (App.1979).

In summary, we affirm the ALJ's findings that claimant suffered a scheduled permanent partial disability to her right upper extremity, that her condition was medically stationary, and that she suffered no impairment of her right shoulder. The award is affirmed.

GREER, J., concurs.

KLEINSCHMIDT, Judge, specially concurring:

I concur in the result.