554 P.2d 898

Elmira KEETON, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Motorola, Inc., Respondent Employer
and Carrier.

No. 1 CA–IC 1446.

Court of Appeals of Arizona,
Division 1,
Department C.

July 27, 1976.

Rehearing Denied Aug. 30, 1976.

Review Denied Sept. 28, 1976.

Michael Mignella, Jr., P. C., Phoenix,
for petitioner.

John J. Budd, Jr., Chief Counsel, Phoenix, for respondent Industrial Commission of Arizona.

Evans, Kitchel & Jenckes, P. C. by Leon D. Bess, Phoenix, for respondent employer and carrier.

## OPINION

FROEB, Judge.

This review of an award of the Industrial Commission questions the authority of an employer to unilaterally discontinue benefits authorized by an Industrial Commission award to a claimant who refuses to submit to certain medical tests.

Petitioner sustained a back injury while working for Motorola on March 9, 1973. After Motorola terminated temporary disability benefits on May 23, 1973, hearings were held before the Industrial Commission, and, on December 18, 1973, the Commission issued its findings and decision, which awarded continuing benefits to petitioner. Petitioner continued to receive benefits until January 23, 1975, when Motorola issued a Notice of Claim Status pursuant to A.R.S. § 23–1027. The Notice terminated medical and compensation benefits on the basis that petitioner had unreasonably refused to follow competent and reasonable medical treatment or aid as recommended. This action was founded upon petitioner's refusal to take a myelographic examination which had been recommended by several physicians in order to determine the cause of petitioner's symptoms. After receiving the Notice of Claim Status, petitioner filed a Request for Hearing with the Industrial Commission, alleging that she was "in need of additional benefits." Prior to the hearing conducted on May 20, 1975 and July 9, 1975, petitioner requested the Commission to order immediate reinstatement of medical and compensation benefits to petitioner for the reason that Motorola had acted improperly in unilaterally terminating her benefits. Petitioner argued that A.R.S. § 23–1027 does not contemplate the unilateral suspension of benefits by the employer and that only the Industrial Commission has the authority to suspend compensation and then only after proper application is made by the employer under A.R.S. § 23–1026(E). The Commission determined that the right of the employer to suspend benefits under A.R.S. § 23–1027 was a question that had not been decided either administratively or judicially and that it would be considered at the hearing in addition to the merits of the question whether petitioner's benefits should be suspended.

Following the hearing, the Commission found that petitioner's refusal to undergo the myelogram was not unreasonable due to the danger inherent in performing such an examination. In addition, the Commission found that Motorola had acted erroneously in suspending benefits under A.R. S. § 23–1027.

Despite this conclusion, the Commission, after considering the evidence, held that petitioner's refusal to subject herself to the risk of myelographic study or surgery made it impossible to conclude that her problems continued to be related to her injury and that her claim should be closed. The Commission determined that her condition probably became stationary sometime prior to January 23, 1975, the date Motorola terminated benefits, but held that January 23, 1975 was an appropriate termination date.

On this review, petitioner argues that the only question properly before the Commission at the hearing was whether Motorola had acted correctly in terminating benefits without making application to the Commission. Petitioner contends it was error for the Commission to consider the merits of the claim prior to Motorola's compliance with the procedures outlined in A.R.S. § 23–1026(E). Petitioner further contends that her benefits should have been reinstated by the Commission as of January 23, 1975, and that such benefits should have continued until a determination on the merits was made by the Commission after proper application by Motorola.

■ As to petitioner's first contention, that it was error for the Commission to consider the merits of the claim, it is a general policy of the law that cases should be tried on their merits and not disposed of on technicalities. The record contains considerable evidence that petitioner was not prejudiced by the Commission's action. The request for a hearing filed by petitioner after Motorola terminated her benefits made no reference to A.R.S. § 23–1027 and the allegedly improper reliance placed on that statute by Motorola. The reason given by petitioner in her request for a hearing was simply that she was "in need of additional benefits." And although petitioner's attorney objected several times to the Commission's consideration of the merits of the claim, both prior to and during the hearings, he cannot reasonably argue that he was unprepared to represent petitioner on the merits at the hearing. He was notified by letter from the Commission on April 21, 1975, approximately one month prior to the first hearing, that the Commission would "consider this hearing to be the 'hearing' referred to in A.R.S. § 23–1026(E)." On April 30, 1975, the Commission again wrote to petitioner's attorney stating, "at that hearing we will cover the question of whether or not the carrier has the power which it has attempted to exercise, in addition to the merits of the question of whether or not the applicant's benefits should or should not be suspended under either of these statutory sections."

We hold, therefore, that it was not improper for the Commission to consider the merits of the claim at the hearing requested by petitioner.

■ As to petitioner's second contention, that she was entitled to benefits up to the date the Commission rendered its decision on the merits, it is first necessary to determine if the Commission was correct in ruling that Motorola acted erroneously in unilaterally terminating petitioner's benefits under A.R.S. § 23–1027.

This statute provides:

No compensation shall be payable for the death or disability of an employee if his death is caused by, or insofar as his disability may be aggravated, caused or continued by an unreasonable refusal or neglect to submit to or follow any competent or reasonable surgical treatment or medical aid.

This section should be considered with A.R.S. § 23–1026(E) which states:

Upon appropriate application and hearing, the commission may reduce or suspend the compensation of an employee who persists in unsanitary or injurious practices tending to imperil or retard his recovery, or who refuses to submit to medical or surgical treatment reasonably necessary to promote his recovery.

The Commission found that there was no essential difference between A.R.S. § 23–1027 and A.R.S. § 23–1026(E) inasmuch as both provisions bar compensation to an employee who unreasonably refuses to submit to medical treatment necessary to promote recovery. It therefore went on to conclude:

. . . that the requirement for applying for suspension or termination to the Commission under A.R.S. § 23–1026(E) is a limitation upon the processing prerogatives of a carrier or employer which desires to suspend or terminate benefits on the basis that medical treatment or advice is not being followed or submitted to, requiring the carrier or employer to apply to the Commission for such a termination or reduction and precluding it from exercising this function unilaterally under A.R.S. § 23–1027.

If a carrier or employer desires to terminate or suspend for the reasons set forth in A.R.S. § 23–1026(E) or A.R.S. § 23–1027, it must apply to the Commission under A.R.S. § 23–1026(E) . . . .

With this conclusion, we agree. The power of carriers and employers to act upon claims independently of the Commis-

sion is found in A.R.S. § 23–1061(G) which provides:

> Except as otherwise provided by law, the insurance carrier or self-insuring employer shall process and pay compensation and provide medical, surgical and hospital benefits, without the necessity for the making of an award or determination by the commission.

A.R.S. § 23–1061(G) vests carriers and employers with broad administrative discretion in processing claims and paying compensation. However, it did not vest Motorola with the authority to terminate or modify the award of benefits made by the Commission in this case. Our decision in *Harbor Ins. Co. v. Industrial Commission,* 24 Ariz.App. 197, 537 P.2d 34 (1975) supports this. We held there that A.R.S. § 23–1061(G) did not give carriers and employers the authority to unilaterally suspend or terminate payment of permanent partial disability benefits to a claimant when the claimant seeks and receives total temporary disability benefits from another carrier as the result of a subsequent industrial injury. Although *Harbor* involved the suspension of permanent partial disability benefits, the principle announced in that case has equal application to this case which involved an award of continuing benefits. To allow carriers and employers unilaterally to terminate an award of benefits under A.R.S. § 23–1027 upon their determination that a claimant had been "unreasonable" in refusing certain medical treatment might result in arbitrary action on the part of carriers and employers and harsh consequences for employees, whom the workmen's compensation statutes were designed to protect.

Having concluded that Motorola acted incorrectly in unilaterally terminating petitioner's benefits, we must next determine if the Commission nevertheless was correct in ruling that petitioner was not entitled to benefits beyond the termination date established by Motorola's Notice of Claim Status. The Commission found that due to "the unavailability of the fur-

ther diagnostic workup [myelogram] which the physicians have recommended and which applicant has refused," it was necessary that petitioner's claim be closed as it was impossible to conclude that her problems related to her injury. The Commission decided that petitioner's condition became stationary on January 23, 1975, and that petitioner was entitled to compensation only to that date. Our review of the record indicates that the evidence supports this conclusion.

Although petitioner's benefits were terminated effective January 23, 1975 as the result of an incorrect procedure on Motorola's part, the latter did not act in bad faith in taking this action. As the Commission has concluded that petitioner was not entitled to benefits beyond January 23, 1975 on the merits, it would be inequitable to allow petitioner to recover benefits beyond this date during the period the procedures under A.R.S. § 23–1026(E) were being completed. Consequently, our decision on this issue will have prospective application only, and it will not apply to the parties to this appeal. An analogous approach has been followed by the Arizona Supreme Court. For example, see: *Southern Pacific Co. v. Cochise County,* 92 Ariz. 395, 377 P.2d 770 (1963); *Arizona State Tax Commission v. Ensign,* 75 Ariz. 376, 257 P.2d 392 (1953), and *Duhame v. State Tax Commission,* 65 Ariz. 268, 179 P.2d 252 (1947). In each of these cases, the court overruled previous decisions, but did not make its new holding applicable to the parties before the court who had acted in reliance on those earlier decisions. The approach followed in these cases is equally applicable to the situation presently before the court where the employer, acting in good faith, terminated benefits pursuant to a statutory scheme which had not been previously subjected to judicial interpretation.

The Decision Upon Hearing and Findings and Award of the Industrial Commission is affirmed.

EUBANK, P. J., and WREN, J., concur.