626 P.2d 155

**Frank J. FIELD, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**7-Up Bottling Company, Respondent Employer,**

**Aetna Casualty & Surety Company, Respondent Carrier.**

**No. 1 CA–IC 2369.**

Court of Appeals of Arizona, Division 1, Department C.

March 19, 1981.

Ely, Bettini & Ulman by Joseph M. Bettini, Phoenix, for petitioner.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Jones, Teilborg, Sanders, Haga & Parks, P.C. by J. Russell Skelton and Gregory L. Folger, Phoenix, for respondents employer and carrier.

## OPINION

FROEB, Judge.

This special action review of an Industrial Commission award challenges the determination that the petitioner's industrially-related condition was stationary without permanent impairment. We set aside the award.

The facts necessary for a determination of this special action review are as follows. In May 1978, while employed by the respondent employer, the petitioner sustained an industrially-related lifting injury. His symptoms were a swollen left testicle and attendant pain. The respondent carrier accepted his claim for benefits.

The petitioner first went to his family physician in early June. He was then referred to John A. Bamberl, D.O., who, along with Don E. Ranney, D.O., and Bernard Sunshine, M.D., diagnosed the petitioner's condition as a left hydrocele, a collection of clear fluid in a sac around the spermatic cord, and recommended surgery. On June 22, 1978, Dr. Ranney performed a hydrocelectomy, a surgical procedure intended to remove the accumulated fluid and surrounding sac.

Although the petitioner's testicle remained swollen and fluid was observed in the scrotal area after surgery, these were considered normal postoperative symptoms. By August 1978, however, it was apparent that the petitioner's recovery was complicated. Dr. Ranney recommended aspiration of the scrotal sac, a procedure involving the insertion of a needle into the scrotum to remove the fluid. This procedure involved risks of infection and bleeding in the scrotal sac. The petitioner refused the recommended treatment.

By August 1978, the petitioner had returned to his former employment. The lifting required at work aggravated the swelling in his left testicle and greatly increased his discomfort. When he reported the symptoms to Dr. Ranney, the doctor recommended that he refrain from lifting.

The petitioner continued to see Dr. Ranney until January 16, 1979. In the course of these intervening consultations, Dr. Ranney repeatedly recommended aspiration. He also warned the petitioner that unless

the aspiration was performed and successful, a surgical exploration would be necessary and if the surgeon discovered that the condition affected the epididymis, an epididymectomy would be necessary. This latter procedure would render the left testicle sterile.

The petitioner continued to refuse the recommended treatment. Because Dr. Ranney considered the matter at a medical impasse, he discharged the petitioner and issued his report of January 24, 1979. This report is an Industrial Commission form. In it, Dr. Ranney described the medical impasse and indicated by checking the appropriate boxes that the petitioner was able to perform regular work, that no further treatment was required, and that his condition was medically stationary. The box for indicating whether or not permanent impairment existed was left blank.

On the basis of this report, the respondent carrier issued a Notice of Claim Status terminating temporary compensation as of January 16, 1979, and classifying the petitioner's condition as stationary without permanent disability. In March 1979, to avoid aggravating his condition by lifting, the petitioner left his job with the respondent employer for work as a real estate salesman shortly after obtaining his real estate broker's license. On April 3, 1979, the petitioner requested a hearing on the merits of the Notice of Claim Status contesting both the determination that his condition was stationary and, assuming arguendo that he was stationary, that he was without permanent impairment causally related to his industrial injury. Pending the scheduled hearing, the respondent carrier arranged for Dr. Sunshine to consult with the petitioner.

Dr. Ranney testified at the scheduled hearing. He diagnosed the petitioner's postoperative condition to be fluid collecting in the scrotal area causing irritation of the epididymis. He confirmed that as of January 16, 1979, this condition required active medical treatment, but that the petitioner had refused the recommended treatment. Because of this refusal, Dr. Ranney considered the case to be at a medical impasse and, for that reason, discharged the

petitioner. He also testified that the petitioner's condition had reached a relatively stable status and, unless he accepted the recommended treatment, he would have to live with the discomfort.

Dr. Sunshine also testified at the scheduled hearing. He diagnosed the petitioner's postoperative condition to be a small left hydrocele. He did not think this condition warranted surgical intervention at this time. He recommended scrotal support and warm baths to help relieve the petitioner's discomfort and to improve the condition. Dr. Sunshine further testified that he did not consider the petitioner's condition to be medically stationary because he hoped for improvement over time.

The administrative law judge's award made the following material findings: First, to the extent that Dr. Ranney's and Dr. Sunshine's diagnoses and recommendations for the treatment of the petitioner's postoperative condition differed, Dr. Ranney's opinion was accepted; second, although as of January 16, 1979, Dr. Ranney recommended active medical care, the petitioner rejected the recommended treatment; third, since this refusal was reasonable, suspension of benefits pursuant to A.R.S. § 23–1026(E) was unwarranted; fourth, because of this reasonable refusal, the petitioner's condition had reached a medical impasse; fifth, in *Keeton v. Industrial Commission*, 27 Ariz.App. 302, 554 P.2d 898 (1976), this court approved an award determining that the claimant was stationary without permanent disability when the claimant's refusal to follow a recommended medical procedure resulted in a medical impasse; sixth, because the petitioner's condition had reached a medical impasse, the condition was considered to be stationary without permanent disability.

The petitioner timely sought administrative review of this award. In his request for review, the petitioner specifically argued that the administrative law judge's findings of fact were inconsistent with his determination that the petitioner's condition was stationary without permanent disability. After this review was denied, the petitioner perfected this Special Action—Industrial Commission.

On appeal, the petitioner first contends that the administrative law judge erroneously interpreted *Keeton v. Industrial Commission.* We agree. In *Keeton,* the claimant sustained a work-related back injury, but reasonably refused a recommended myelogram. As a consequence, her physicians were unable to determine that her symptoms were causally related to the industrial injury. This failure to establish an essential element of her case justified closing the claim because the petitioner was unable to show that she had an industrially-related condition requiring treatment or resulting in permanent impairment. The relationship between the reasonable refusal of recommended medical treatment and the termination of benefits, therefore, is different in this case. Here, the reasonable refusal by the petitioner does not prevent a determination as to whether the condition was stationary or whether it involves permanent impairment. *Keeton* is inapplicable to the present case.

*Petitioner's main argument is that there* is no evidence that his condition resulting from the industrial injury was stationary. He argues that since it was not stationary, the administrative law judge erred in terminating temporary benefits and determining that he was without permanent disability. We agree.

 The physical condition of a claimant becomes stationary when it has reached a relatively stable status so that nothing further in the way of medical treatment is indicated to improve it. *Home Insurance Co. v. Industrial Commission,* 23 Ariz.App. 90, 530 P.2d 1123 (1975). It is implicit in this definition that medical testimony would be needed to establish when the condition has become stationary; that is, when further medical treatment will not improve the condition. *Cf. Lawler v. Industrial Commission,* 24 Ariz.App. 282, 537 P.2d 1340 (1975) (medical testimony needed to prove existence of a disability). As already pointed out, a reasonable refusal to follow a recommended surgical treatment or medical procedure does not necessarily require a finding that the condition is stationary. It

merely means that the treatment recommended is eliminated as a medical option. If expert medical testimony establishes that a viable alternative is available which might improve the condition, then the condition can still be considered nonstationary. In the event the medical experts disagree, the administrative law judge must resolve the conflict. *See Martin v. Industrial Commission,* 20 Ariz.App. 376, 513 P.2d 383 (1973).

 Dr. Ranney's prescribed method of treatment consisted of aspiration, which, if unsuccessful, would be followed by surgical intervention. Petitioner's refusal to undergo this was regarded by Dr. Ranney as a medical impasse, but he did not say that an alternate mode of conservative treatment would be unsuccessful. Thus, if a conclusion that petitioner was medically stationary is to be drawn from his testimony, it relates solely to petitioner's refusal to follow his recommended treatment consisting of operative or surgical procedures.

On the other hand, Dr. Sunshine recommended a more conservative mode of treatment consisting of support, hot baths, and the passage of time. He rejected surgical and operative procedures unless the conservative treatment failed. He testified that under the prescribed conservative treatment he hoped for and would expect improvement. He did not conclude that petitioner's condition was stationary.

There is no medical evidence, therefore, that petitioner's condition was stationary. What is obviously lacking to support the finding that petitioner was stationary is an opinion from Dr. Ranney that conservative treatment would probably not result in any improvement of petitioner's condition.

Since the determination that petitioner's condition was stationary cannot stand, the finding of no permanent impairment is premature and the award must be set aside.

O'CONNOR, P. J., and WREN, J., concur.