848 P.2d 886

**Mario VELEZ, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**City of Scottsdale, Respondent Employer,**

**City of Scottsdale, Respondent Carrier.**

**No. 1 CA–IC 91–0027.**

Court of Appeals of Arizona, Division 1, Department E.

March 18, 1993.

sion of benefits and denied coverage for unauthorized medical treatment received after the suspension. The main issues are whether the suspension was void and whether medical treatment should have been covered even if unauthorized. We hold that the suspension here was voidable, as opposed to void, and that the award properly excluded coverage for unauthorized medical treatment.

On January 20, 1983, petitioner employee ("the employee"), a street maintenance worker for the self-insured respondent employer, the City of Scottsdale ("City"), injured his lower back at work. One day later, the employee saw orthopedic surgeon Samuel S. Kaplan, M.D., apparently because the City had designated Dr. Kaplan as the treating physician under Ariz.Rev. Stat.Ann. ("A.R.S.") section 23–1070(A) (1983).[1]

In his initial report, Dr. Kaplan indicated that his only positive finding was lower back tenderness and that the employee "hyperreacted" to the examination. He diagnosed an acute back sprain, placed the employee on non-work status, and recommended bed rest, medication, and moist heat. The employee was to return in one week.

In his next report of January 28, 1983, Dr. Kaplan indicated that the employee had called the night before to complain of increased pain but appeared the next day to request a release to work. Dr. Kaplan found nothing objective and released the employee to full-work status as of January 31, 1983. The employee was to return in one week for a "final visit."

Dr. Kaplan last saw the employee on February 4, 1983. His report states:

Patient arrives in the office extremely hostile. "Why am I not better", [sic] looking at my [sic] very defiantly. "You should have made me better. You are

Taylor & Schaar by Thomas R. Stillwell, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Long, Lester & Lundmark, P.A. by R. Todd Lundmark, Phoenix, for respondent Employer and Carrier.

## OPINION

CLABORNE, Judge.

This is a review of an industrial commission award that upheld a unilateral suspen-

---

1. We observe that section 23–1070 is not limited to self-insuring employers and that even if an employer is self-insuring, this section does not apply to "the state or a political subdivision thereof...." A.R.S. § 23–1070(A). We have not found any case interpreting the undefined term "political subdivision" as used in the current section 23–1070(A). Because the parties have not addressed the issue, we express no opinion as to whether the City falls within this class and accordingly would be without authority to designate the treating physician.

not treating me". [sic] Patient has been hostile since he has walked into the office on his first visit. I have told him literally that "I cannot wave a magic wand" and make him better. The patient really has no communication with me at all and I feel it is best that we terminate the doctor/patient relation. I will contact the City of Scottsdale re another referral.

On February 11, 1983, the City responded with two notices. First, it issued a notice of claim status accepting compensability, saying that a check of $87.12 for compensation from January 21, 1983 was enclosed, but also changing the disability status to temporary partial disability effective January 31, 1983. Second, it issued a suspension notice and checked the box on the approved form to indicate that the employee had "refused to submit to, or obstructed, *a* medical examination." (Emphasis added.) Both notices included standard protest notices. The employee *did not protest either notice.*

In March 1983, the employee initiated privately covered treatment with a chiropractor, who released the employee to regular work status in June 1983. The employee subsequently returned for treatment of episodic exacerbations, but he remained on regular work status for the next several years.

In late July 1989, the employee's symptoms significantly worsened. He returned to the chiropractor, who took the employee off work and referred him to medical specialists for evaluation. The chiropractor and some of the examining physicians linked the worsened symptoms to the 1983 industrial injury.

On February 6, 1990, the employee filed a petition to reopen the 1983 injury claim. The industrial commission responded by notifying the employee that this claim had never been closed but rather had been suspended "for failure to attend an Independent Medical Evaluation." It also advised the employee to contact the City for another medical evaluation.

The City subsequently scheduled an independent medical evaluation. The consultant concluded that the employee's current condition was unrelated to his "injury in 1980 [sic]...."

Relying on this report, the City issued a notice terminating the 1983 claim without permanent impairment effective April 1, 1990. The employee timely requested a hearing. The parties subsequently agreed to treat the February 1990 petition to reopen as a late protest of the February 1983 suspension notice.

The testimony at the hearing relevant to the issues on review was as follows. The employee denied obstructing the February 4, 1983 examination. He claimed to have merely complained of continuing pain and that Dr. Kaplan responded by practically "thro[wing] me out of the office...."

The City's loss control manager testified that the City suspended the employee's compensation because Dr. Kaplan reported that the employee's hostility prevented a scheduled examination. She, however, conceded that this was probably a routine examination, not a scheduled independent medical examination. She also conceded that although the City uses other physicians, it did not attempt to schedule an appointment for the employee to see another physician.

Dr. Kaplan testified that he was the employee's treating physician. After the January 28, 1983 examination, however, he did not recommend further treatment and had scheduled the last examination only to confirm the employee's status after returning to regular work. Dr. Kaplan denied that he felt threatened by the employee. He instead felt "either I wasn't communicating to the patient or the patient was in some way hostile to me and then I suggest[ed] transferring care." Finally, Dr. Kaplan had no opinion as to whether the January 1983 industrial injury was stationary when he last saw the employee.

The Administrative Law Judge ("A.L.J.") then issued the award. Among other things, he found that "it is not believed defendant employer was acting without any reasonable basis in issuing a suspension notice" and that "while perhaps voida-

ble had a timely REQUEST FOR HEARING been made ...," it is not deemed that under appropriate law, "said notice was void ab initio...." He also found that the City was not responsible for unauthorized medical care after the suspension. The A.L.J. affirmed on administrative review. The employee then brought this special action.

On review, the employee first claims that the suspension was ineffective from the very beginning. He argues that the City lacked statutory authority unilaterally to suspend his benefits because A.R.S. subsection 23–1026(E), not subsection 23–1026(C), applied to this suspension. The City answers by arguing that the suspension was valid because subsection (C) and not (E) applied to this case.

In 1983, the statute governing suspensions provided:

A. An employee who may be entitled to compensation under this chapter shall submit himself for medical examination from time to time at a place reasonably convenient for the employee, if and when requested by the commission, the state compensation fund, his employer or the insurance carrier.

B. The request for the medical examination shall fix a time and place having regard to the convenience of the employee, his physical condition and ability to attend. The employee may have a physician present at the examination if procured and paid for by himself.

C. If the employee refuses to submit to the medical examination or obstructs the examination, his right to compensation shall be suspended until the examination has been made, and no compensation shall be payable during or for such period.

D. A physician who makes or is present at the medical examination provided by this section may be required to testify as to the result thereof.

E. Upon appropriate application and hearing, the commission may reduce or suspend the compensation of an employee who persists in unsanitary or injurious practices tending to imperil or retard his recovery, or who refuses to submit to medical or surgical treatment reasonably necessary to promote his recovery.

A.R.S. § 23–1026 (1983).[2]

Cases involving subsection (C) have involved independent medical examinations under subsections (A) and (B).[3] But they have not addressed whether subsection (C) is restricted to such examinations. *Edmunds v. Industrial Comm'n*, 126 Ariz. 486, 616 P.2d 946 (App.1980), for example, states that "A.R.S. § 23–1026(C) contemplates some wrongful act on the part of the employee who 'refuses' to attend or 'obstructs' *a* medical examination." *Id.* at 487, 616 P.2d at 947 (emphasis added); *see also Garza v. Industrial Comm'n*, 17 Ariz. App. 525, 530, 498 P.2d 599, 604 (1972) ("it is not every non-appearance for *a* medical examination, *usually unilaterally scheduled by the carrier*, which warrants a suspension of the benefits") (emphasis added).

■ The employee argues that subsection (C) is restricted to independent medical examinations. The City, in turn, argues that the scope of the subsection is not so narrow.[4] For the following reasons, we agree with the employee that this subsection applies exclusively to independent medical examinations.

First, the language of the subsection supports this conclusion. Subsection (C) uses the word "the," not the word "a." The examination referred to in (C) is the examination authorized under the immediately previous subsections (A) and (B).

---

2. Section 23–1026 was subsequently amended, but this amendment did not change subsections (C) or (E). *See* 1987 Ariz.Sess.Laws 3rd S.S., Ch. 2, § 5.

3. For comparable statutory authority for an initial independent medical evaluation, see A.R.S. section 23–908(E).

4. The City also suggests that Dr. Kaplan's February 4, 1983 examination was tantamount to an independent medical examination because it was a "final visit" scheduled only to examine claimant, not to treat him. In our opinion an examination qualifies as an independent medical examination under subsection 23–1026(C) only if the notice requirements of subsection 23–1026(B) and Ariz.Comp.Admin.R. & Reg. R4–13–114(A) have been satisfied.

These subsections, of course, authorize independent medical examinations. A.R.S. § 23–1026(A) and (B); *see also* Ariz.Comp.Admin.R. & Reg. ("A.A.C.") R4-13–114 (Supp.1990).

Second, the history of section 23–1026 supports the conclusion that the current subsection (C) is restricted to independent medical examinations. The original version of this section was divided into two parts related to suspensions. The first applied to independent examinations at the commission's request and imposed a mandatory suspension for failure to attend or obstruction of such examinations. The second applied to refusals to submit to reasonably necessary medical treatment and permitted the commission to reduce or suspend compensation in such cases. *See* 1925 Ariz. Sess.Laws Ch. 83, § 77. This first part evolved into the current subsections 23–1026(A)–(D); the second part became the current subsection 23–1026(E).

Finally, the conclusion that subsection (C) applies only to independent medical examinations is consistent with the remedial purpose of workers' compensation. *See generally, e.g., State Compensation Fund v. Nelson,* 153 Ariz. 450, 453, 737 P.2d 1088, 1091 (1987). Because suspension is a severe sanction, we narrowly construe the subsection authorizing unilateral imposition of suspension. Furthermore, the required notice of an independent medical examination customarily includes a warning notifying an employee of the consequences of a failure to attend or obstruction of such examination. A routine medical appointment includes no such warning.[5]

A reading of these two sections indicates that subsection (C) alone authorizes a unilateral suspension. *See, e.g., Edmunds,* 126 Ariz. at 487, 616 P.2d at 947. Subsection (E), on the other hand, expressly authorizes only an application to the commission for a suspension. *See, e.g., Keeton v.*

*Industrial Comm'n,* 27 Ariz.App. 302, 304–05, 554 P.2d 898, 900–01 (1976).

■ The question remains, however, whether the unauthorized unilateral suspension in the current case was void from the beginning ("void ab initio"), as the employee asserts, or merely voidable *upon timely protest* and hearing, as the A.L.J. found. We agree with the A.L.J.'s conclusion.

No prior case has addressed this question. The only case holding that a suspension was void from the beginning is *Godfrey v. Industrial Comm'n,* 124 Ariz. 153, 157–58, 602 P.2d 821, 825–26 (App.1979). In *Godfrey*, benefits were suspended when the employee became disabled by pregnancy, but the employee failed timely to protest the suspension. The court concluded that this suspension was "void ab initio" because no statute authorized a suspension for this reason. *Id.*

*Godfrey* however, also cites *Keeton* for the proposition that finality does not apply "where a carrier unilaterally terminates benefits in noncompliance with the statutory requirement that application to the Commission be made for termination of benefits." *Id.* at 155–56, 602 P.2d at 824–25. In our opinion, this characterization of *Keeton* is inaccurate.

First, the employee in *Keeton* timely protested the suspension. Here, there was no timely protest. The issue, accordingly, was limited to whether the unilateral suspension was voidable. *Keeton,* 27 Ariz.App. at 303, 554 P.2d at 899. Second, *Keeton* concerned the relationship between A.R.S. section 23–1027 and subsection 23–1026(E), not the relationship here. The court concluded that because the carrier had relied on section 23–1027 in good faith and the evidence supported a termination of benefits when they were suspended, the principle that an unauthorized suspension is voidable would

---

**5.** Our conclusion is consistent with the administrative interpretation of subsection 23–1026(C). The commission's published guidelines to claim administrators state that "Carriers/Employers may unilaterally suspend benefits pursuant to A.R.S. § 23–1026–A through D [sic] if the injured worker refuses to submit to or obstructs

*an independent medical examination or consultation." See* 1988 Arizona Industrial Commission Claims Division Annual Seminar at 12 (emphasis added). But because this guideline was not submitted below, we do not consider it as evidence supporting our conclusion.

not be retroactively applied to Keeton's suspension. *Id.* at 305, 554 P.2d at 901.

The current case is analogous. As noted above, no prior case has held that subsection 23–1026(C) applies exclusively to independent medical examinations. Also, the commission's approved suspension form ambiguously refers to a refusal to attend or obstruction of *"a"* medical examination, not an independent medical examination or an examination authorized under subsection 23–1026(A). Finally, as the A.L.J. found, the City reasonably considered the employee's conduct to be an obstruction of an examination as opposed to a refusal to submit to medical treatment.

We accordingly conclude that even if an unauthorized unilateral suspension would be "void ab initio" in future cases, the suspension in the current case was only voidable. Because the employee failed timely to protest the February 11, 1983 suspension notice, this notice is final. *E.g., Nelson v. Industrial Comm'n,* 115 Ariz. 293, 294–95, 564 P.2d 1260, 1261–62 (App. 1977).

The employee alternatively argues that the suspension notice was "void ab initio" under *Roseberry v. Industrial Comm'n,* 113 Ariz. 66, 546 P.2d 802 (1976). We disagree. This court has interpreted *Roseberry* to apply only if a carrier issues a notice of claim status that is contrary to the very information on which it relies. *Calixto v. Industrial Comm'n,* 126 Ariz. 400, 402, 616 P.2d 75, 77 (App.1980). In the current case, Dr. Kaplan's February 4, 1983 report is not contrary to the February 11, 1983 suspension notice because the doctor reported that he had not examined the employee because of his hostility. The City took no further action on the claim for the simple reason that it had suspended benefits.

■ The employee next asserts that the City is liable for medical treatment related to the industrial injury that he received after the suspension. We disagree. The employee had remedies available to him. He of course could have timely protested the suspension, *see generally* A.R.S. § 23–947, or he could have requested commission approval for a change of physicians, *see generally* A.R.S. § 23–1070(E). He instead arranged to have private coverage of treatment received after the suspension. The City is not responsible for this unauthorized treatment. *See, e.g., Kennecott Copper Corp. v. Industrial Comm'n,* 115 Ariz. 184, 186–87, 564 P.2d 407, 409–10 (App. 1977) (self-provider not liable for unauthorized treatment).

For these reasons, we affirm the award.

VOSS, P.J., and EUBANK, J. (retired), concur.

NOTE: Judge William E. Eubank, retired, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, §§ 3, 20.