IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

_____

CHARLES W. STENZ, DECEASED,
*Petitioner Employee*,

ELIZABETH STENZ, WIDOW,
*Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent,*

CITY OF TUCSON,
*Respondent Employer,*

PINNACLE RISK MANAGEMENT SERVICES,
*Respondent Insurer.*

No. 2 CA-IC 2013-0022
Filed October 8, 2014

_____

Special Action—Industrial Commission
ICA Claim No. 20051100192
Insurer No. WCTUC2005478214
Gary M. Israel, Administrative Law Judge

**AWARD SET ASIDE**

_____

COUNSEL

Tretschok, McNamara & Miller, P.C., Tucson
By J. Patrick Butler
*Counsel for Petitioner Employee and Petitioner*

The Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

M. Ted Moeller, Tucson
and
Humphrey & Petersen, P.C., Tucson
By Andrew J. Petersen
*Co-counsel for Respondents Employer and Insurer*

---

## OPINION

Judge Vásquez authored the opinion of this Court, in which Judge Brammer[1] concurred and Judge Howard specially concurred.

---

V Á S Q U E Z, Judge:

**¶1**      In this statutory special action, petitioner Elizabeth Stenz, widow of Charles Stenz, the petitioner employee, challenges the administrative law judge's (ALJ) award denying her interest on the death benefits she received four years after Charles's death. She argues Arizona law requires payment of the interest. We agree and set aside the award.

### Factual and Procedural Background

**¶2**      We view the facts in the light most favorable to upholding the award. *Polanco v. Indus. Comm'n*, 214 Ariz. 489, ¶ 2, 154 P.3d 391, 392-93 (App. 2007). But, here, the facts are not in dispute. Charles was employed by respondent employer City of Tucson and suffered a compensable injury in 2005. Respondent insurer-carrier Pinnacle Risk Management accepted the claim and paid benefits to Charles. After Charles died on April 23, 2009,

---

[1]The Hon. J. William Brammer, Jr., a retired judge of this court, is called back to active duty to serve on this case pursuant to orders of this court and the supreme court.

Elizabeth filed a claim seeking death benefits under A.R.S. § 23-1046(A). Pinnacle denied the claim, contending Charles's death was not work related, and the ALJ upheld the denial. This court set aside the award upholding the denial. *Stenz v. Indus. Comm'n*, 2 CA-IC 2010-0016, ¶ 14 (memorandum decision filed Aug. 25, 2011). After a hearing on remand, the ALJ issued his decision and award granting Elizabeth's claim for death benefits on December 26, 2012. On March 5, 2013, the ALJ affirmed that award. The following month, Pinnacle paid the benefits dating back to Charles's death but did not pay any interest.

¶3 Elizabeth requested a hearing pursuant to A.R.S. § 23-1061(J), contending she was entitled to interest on the unpaid death benefits for the four-year period between Charles's death and their payment. Pinnacle asserted that no interest was due because the claim was paid timely on April 23, 2013, following the ALJ's December 26, 2012 award. Based on the parties' legal memoranda, the ALJ determined that Pinnacle "did not become liable to pay [death] benefits until [the] March 5, 2013 Decision Upon Review became final," that the payment of the benefits was not untimely, and that no interest was due. Elizabeth filed this special action, and we have jurisdiction pursuant to A.R.S. §§ 23-951 and 12-120.21(A)(2). *See also* Ariz. R. P. Spec. Actions 10.

## Discussion

¶4 Elizabeth argues the ALJ erred by determining she was not entitled to interest on her death benefits. Pinnacle counters that the benefits were paid timely after the award granting them was issued and therefore no interest was owed.

¶5 We generally defer to the ALJ's factual findings, but where, as is the case here, the ALJ did not conduct an evidentiary hearing and the material facts are undisputed, the issue becomes a question of law, which we review de novo. *Finnegan v. Indus. Comm'n*, 157 Ariz. 108, 109, 755 P.2d 413, 414 (1988). We also review questions of statutory interpretation de novo. *Hahn v. Indus. Comm'n*, 227 Ariz. 72, ¶ 5, 252 P.3d 1036, 1038 (App. 2011). "When construing workers' compensation statutes, we favor interpretations that make the claimant whole." *Carbajal v. Indus. Comm'n*, 223 Ariz.

1, ¶ 10, 219 P.3d 211, 213 (2009); *see also Munoz v. Indus. Comm'n*, 234 Ariz. 145, ¶ 9, 318 P.3d 439, 442 (App. 2014) (Workers' Compensation Act liberally construed to effectuate remedial purpose).

¶6　　　　Each party relies on *Tisdel v. Industrial Commission*, 156 Ariz. 211, 751 P.2d 527 (1988), and *DKI Corp./Sylvan Pools v. Industrial Commission*, 173 Ariz. 535, 845 P.2d 461 (1993), to support its position. We therefore turn to those cases, which we agree guide our decision here.

¶7　　　　In *Tisdel*, the carrier issued its notice of claim status in 1971, did not deny coverage, and suggested the claimant would begin receiving permanent partial disability benefits. 156 Ariz. at 212, 751 P.2d at 528. Neither the claimant nor the carrier followed up with that notice, and no benefits were paid at the time. *Id.* Thirteen years later, the claimant sustained a second injury and hired counsel to assist with that claim; counsel discovered the prior oversight and sought payment of the past due benefits from the 1971 claim. *Id.* The carrier paid the full amount of benefits due on the 1971 claim but refused to pay interest. *Id.*

¶8　　　　Our supreme court concluded that a workers' compensation claimant is owed interest under the general interest statute, A.R.S. § 44-1201, on benefits not timely paid. *Tisdel*, 156 Ariz. at 212-13, 751 P.2d at 528-29. That statute states, in relevant part, that "[i]nterest on any loan, indebtedness or other obligation shall be at the rate of ten per cent per annum." § 44-1201(A).[2] In determining when interest began to accrue, the court noted the carrier had not denied coverage and "[c]ounsel for both parties stipulated that it was an error [for the carrier] not to have issued a notice of permanent disability in December of 1971." *Tisdel*, 156

---

[2]Section 44-1201(A) previously provided that "[i]nterest on any loan, indebtedness, judgment or other obligation shall be at the rate of ten per cent per annum." 2011 Ariz. Sess. Laws, ch. 99, § 15. We cite the current version of the statute. *See DKI*, 173 Ariz. at 537, 845 P.2d at 463 (omitting "judgment" language from discussion of § 44-1201(A)).

Ariz. at 212, 751 P.2d at 528. The court further noted that A.R.S. § 23-1047(A), the statute establishing the procedure for payment of benefits in that case, provides that an "employer or insurance carrier may commence payment of a permanent disability award without waiting for a determination under subsection B of this section." *Tisdel*, 156 Ariz. at 213, 751 P.2d at 529. Because "the carrier could have begun payments as of 23 December 1971 when it issued its notice of claims status," the court concluded "that the legal obligation for interest occurred on 23 December 1971 when the carrier had notice of its obligation to pay permanent benefits." *Id.*

**¶9** Unlike the carrier's acceptance of the claim in *Tisdel*, the carrier in *DKI* denied the claimant's petition to reopen his claim for benefits. 173 Ariz. at 536, 845 P.2d at 462. The claimant protested the denial with the Industrial Commission and requested interest on any benefits ultimately awarded. *Id.* The ALJ determined the claimant had a new, additional, or previously undiscovered injury and awarded benefits. *Id.* In addition, the ALJ awarded the claimant interest beginning from the filing of the petition to reopen to the date of the award. *Id.*

**¶10** On review, our supreme court first addressed the availability of interest under the Workers' Compensation Act, restating its holding in *Tisdel* that a claimant awarded workers' compensation benefits is entitled to interest, pursuant to § 44-1201(A), on any past-due benefits. *DKI*, 173 Ariz. at 537, 845 P.2d at 463. In determining when interest begins to accrue, the court noted that, "[a]lthough factually distinguishable, *Tisdel*'s legal principle applies to this case: interest only begins to accrue when (1) there is a legal 'indebtedness . . . or other obligation' to pay benefits *and* (2) when the carrier has 'notice of [this] obligation to pay.'" *Id.*, quoting *Tisdel*, 156 Ariz. at 213, 751 P.2d at 529 (alterations in *DKI*).

**¶11** The court then applied this legal principle to consider whether simply filing the petition to reopen created an indebtedness or obligation. *Id.* The court determined that, unlike the carrier's notice of claim status in *Tisdel*, a petition to reopen "does not create an obligation to pay benefits" because the claimant "must show a 'new, additional or previously undiscovered temporary or

permanent condition'" before the Commission "has authority to even reopen the claim, let alone to determine that an employer or carrier is obligated to pay any requested benefits." *Id.*, *quoting* § 23-1061(H). Accordingly, citing *Tisdel*, the court concluded the claimant in *DKI* was not entitled to interest computed from filing the petition to reopen. *Id.*

¶12 Next, the court considered "the liquidated-unliquidated test," which "generally applies in deciding what constitutes an 'indebtedness . . . or other obligation' so that interest begins to accrue." *Id.* at 538, 845 P.2d at 464. The court noted "[t]his test allows interest on 'liquidated claims' but not on 'unliquidated' claims." *Id.* Liquidated means "'the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion.'" *Id.*, *quoting La Paz County v. Yuma County*, 153 Ariz. 162, 168, 735 P.2d 772, 778 (1987).

¶13 The court further noted that, in *Tisdel*, the claim "was for scheduled benefits, meaning that no loss of earning capacity determination was required." *Id.*, *citing* A.R.S. § 23-1044(B). "If Tisdel's average monthly wage was susceptible to mathematical computation and applied to the statutory payment schedule in 1971, Tisdel's claim would have been liquidated at that time." *Id.* The court thus concluded "the 'obligation' would have come into existence when the [carrier's] notice of claim status was issued—in 1971—and the liquidated-unliquidated test explains *Tisdel*." *Id.* Addressing the facts in *DKI*, the court observed that the initial award "did not contain a specific amount of benefits due" and that the record did not contain any "indication that the amount of benefits could have been accurately determined when the initial award was entered." *Id.* Consequently, the court concluded the benefits were unliquidated and the ALJ erred in awarding the claimant interest from the date the petition to reopen was filed. *Id.* at 538-39, 845 P.2d at 464-65.

¶14 It is against this backdrop that we consider whether Elizabeth is entitled to interest on the death benefits she was

awarded under § 23-1046.[3] We first must determine when Pinnacle's "legal 'indebtedness . . . or other obligation' to pay [death] benefits" to Elizabeth arose. *DKI*, 173 Ariz. at 537, 845 P.2d at 463, *quoting Tisdel*, 156 Ariz. at 213, 751 P.2d at 529. Here, unlike the carrier in *Tisdel*, Pinnacle had denied Elizabeth's claim, disputing that Charles's death resulted from an accident arising out of and in the course of his employment. Similar to the petition to reopen in *DKI*, a claim for death benefits "does not create an obligation to pay benefits." *Id.* at 537, 845 P.2d at 463. Either the carrier must acknowledge, or the claimant must establish, the decedent was "killed by accident arising out of and in the course of his employment," A.R.S. § 23-1021, the claimant is a dependent entitled to death benefits, A.R.S. § 23-1064, and, in some instances, the degree of the claimant's dependency, § 23-1046(A)(5). If the carrier fails to acknowledge its obligation to pay the benefits, the claimant must establish that obligation "before the Commission has authority . . . to determine that an employer or carrier is obligated to pay any requested [death] benefits." *DKI*, 173 Ariz. at 537, 845 P.2d at 463.

**¶15**     Here, the ALJ determined Elizabeth was entitled to death benefits under § 23-1046. Pinnacle does not challenge that determination on appeal. The question remains whether the death benefits are liquidated or unliquidated under the test *DKI* announced. The amount of death benefits owed is set by statute based on the decedent's average monthly wage, *see* § 23-1046(A)(2), and in that way is similar to the permanent partial disability benefits paid pursuant to § 23-1044(B)(21) in *Tisdel*. As such, death benefits are "susceptible to mathematical computation" and subject to a "statutory payment schedule." *DKI*, 173 Ariz. at 538, 845 P.2d at 464. Thus, the death benefits Elizabeth was awarded were liquidated and constituted a legal indebtedness or other obligation to pay upon the ALJ's award. *See id.* at 538-39, 845 P.2d at 464-65.

---

[3]Section 23-1046 defines the compensation payable in case of an industrial injury causing death; prescribes the amount payable and the duration of payments; and identifies the beneficiaries entitled to receive such compensation pursuant to A.R.S. § 23-1021.

¶16 Our concurring colleague concludes § 23-1046(A) alone creates Pinnacle's obligation to pay. *See infra* ¶¶ 27-28. The issue presented here, like in *Tisdel* and *DKI*, is the claimant's entitlement to interest accrued before the award, or pre-judgment interest. Although we agree generally that § 23-1046(A) entitles Elizabeth to such interest under the liquidated-unliquidated test, a further step is necessary before Pinnacle's obligation to pay is established. This is because, just as in *DKI*, but unlike in *Tisdel*, Pinnacle did not accept Elizabeth's claim. *See DKI*, 173 Ariz. at 538, 845 P.2d at 464 (discussing § 23-1044(B) as basis for liquidated claim in *Tisdel*, where carrier accepted claim). Pre-judgment interest, as its name implies, is interest ending upon the entry of judgment. *See Metzler v. BCI Coca-Cola Bottling Co.*, 230 Ariz. 26, ¶ 7, 279 P.3d 1188, 1190 (App. 2012) ("[T]he term 'prejudgment' in 'prejudgment interest' necessarily implies a period ending at judgment."). Thus, a party generally is not entitled to pre-judgment interest until that party obtains a judgment in his or her favor. In the workers' compensation setting, that "judgment" is either the ALJ's benefits award, based on a determination that the claimant established the claim or, as in *Tisdel*, the carrier's acceptance of the claim.

¶17 Accordingly, next we must determine "when [Pinnacle] had 'notice of its obligation to pay.'" *DKI*, 230 Ariz. at 537, 845 P.2d at 463, *quoting Tisdel*, 156 Ariz. at 213, 751 P.2d at 529. Elizabeth's claim for death benefits was filed with the Commission on September 21, 2009, sent to Pinnacle on October 21, 2009, and denied by Pinnacle on October 29, 2009. Thus, for purposes of the liquidated-unliquidated test, Pinnacle had notice of this obligation to pay in October 2009. In *Tisdel*, the court noted that under the statute at issue in that case, § 23-1047(A), the carrier did not have to wait for a formal determination of the claim and, instead, could have begun payments when it issued its notice of claim status. *Tisdel*, 156 Ariz. at 213, 751 P.2d at 529. Section 23-1046(A) does not contain the same provision as § 23-1047(A), which allows a carrier to begin payments without waiting for a determination by the Commission. However, § 23-1061(G) provides, in relevant part, that "the insurance carrier or self-insuring employer shall process and pay compensation and provide medical, surgical and hospital benefits, without the necessity for the making of an award or determination by the

commission." Thus, under § 23-1061(G), Pinnacle could have begun payments to Elizabeth after receiving notice she had filed her claim for death benefits and before the Commission made its determination. *See Keeton v. Indus. Comm'n*, 27 Ariz. App. 302, 305, 554 P.2d 898, 901 (1976) ("§ 23-1061(G) vests carriers . . . with broad administrative discretion in processing claims and paying compensation.").

¶18        In sum, § 23-1046(A) provides that, after an industrial injury causing death, compensation known as a death benefit "shall be payable in the amount, for the period, and to and for the benefit of . . . the surviving spouse." The ALJ determined Elizabeth had established her claim under the statute, Pinnacle received notice of the claim in October 2009, the benefits were for a liquidated sum, and Pinnacle did not pay the benefits until April 23, 2013. We therefore conclude Elizabeth's death benefits constitute a legal indebtedness or other obligation under § 44-1201(A). The benefits were not paid timely, and interest on those benefits began to accrue from the time Pinnacle received notice of Elizabeth's claim. *See Tisdel*, 156 Ariz. at 212-13, 751 P.2d at 528-29; *DKI*, 173 Ariz. at 537, 845 P.2d at 463.

¶19        At oral argument, Pinnacle argued that, except as in *Tisdel* where the carrier accepts a claim, a claimant is entitled only to post-award interest in the workers' compensation setting. But that position is counter to our supreme court's analysis in *DKI*. In discussing "what constitutes an 'indebtedness . . . or other obligation' so that interest begins to accrue," *DKI*, 173 Ariz. at 538, 845 P.2d at 464, the court cited cases dealing with pre-judgment interest, *see Schade v. Diethrich*, 158 Ariz. 1, 14, 760 P.2d 1050, 1063 (1988); *La Paz County*, 153 Ariz. at 168, 735 P.2d at 778; *Fleming v. Pima County*, 141 Ariz. 149, 155-56, 685 P.2d 1301, 1307-08 (1984). And, courts specifically use the liquidated-unliquidated test to determine whether parties are entitled to pre-judgment—or, as is the case here, pre-award—interest. *See John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 208 Ariz. 532, ¶¶ 39-40, 96 P.3d 530, 542 (App. 2004); *Alta Vista Plaza Ltd. v. Insulation Specialists Co.*, 186 Ariz. 81, 82-83, 919 P.2d 176, 177-78 (App. 1995).

**¶20**      Our conclusion is supported by the public policy considerations underlying the Workers' Compensation Act and § 44-1201.  The purpose of the Act is "to dispense, so far as possible, with litigation between employer and employee and to place upon industry the burden of compensation for injuries caused by the employment."  *Pressley v. Indus. Comm'n*, 73 Ariz. 22, 28, 236 P.2d 1011, 1015 (1951); *see also* Ariz. Const. art. XVIII, § 8.  And, an award of interest under § 44-1201 serves to compensate the injured party, which in the workers' compensation setting is the employee or his dependents.  *Cf. Dawson v. Withycombe*, 216 Ariz. 84, ¶ 99, 163 P.3d 1034, 1063 (App. 2007) ("An award of prejudgment interest serves the dual purpose of recompensing the victim and deterring defendants from dilatory litigation tactics.").  As our supreme court has explained:

> Where money belonging to a party is not timely paid, interest is generally awarded. This is because the party entitled to use of the money has been deprived of that use, and the party retaining it has been unjustly enriched.

*La Paz County*, 153 Ariz. at 168, 735 P.2d at 778 (citation omitted). Awarding pre-award interest to a workers' compensation claimant when the carrier fails to pay benefits timely comports with these policy concerns.

**¶21**      Moreover, a good-faith dispute over liability does not prevent the award of interest on a liquidated claim.  *Precision Heavy Haul, Inc. v. Trail King Indus., Inc.*, 224 Ariz. 159, ¶ 11, 228 P.3d 895, 898 (App. 2010); *John C. Lincoln Hosp.*, 208 Ariz. 532, ¶ 40, 96 P.3d at 544; *see also Tisdel*, 156 Ariz. at 214, 751 P.2d at 530 ("Interest is not based on diligence or lack of diligence.  Interest accrues and becomes payable when the debt is due.").  Thus, that Pinnacle initially challenged Elizabeth's entitlement to the benefits does not affect our analysis.  And, permitting carriers to avoid paying interest on liquidated benefits from the time they are notified of a claim provides carriers a significant disincentive to honor legitimate claims, as there would be no penalty associated with contesting payment until a final award is issued.  This runs counter to

Arizona's public policy of speedy resolution of these claims, a right our Constitution guarantees injured workers in exchange for requiring them to forego their rights to maintain a tort action to recover damages for those injuries. Ariz. Const. art. XVIII, § 8; *see also Grammatico v. Indus. Comm'n*, 208 Ariz. 10, ¶ 7, 90 P.3d 211, 213 (App. 2004).

**¶22** Pinnacle had the use of the death benefit money, and Elizabeth did not. "We do not feel it unjust to require the carrier to pay interest on [benefits] it should have paid" before the ALJ's 2012 award. *Tisdel*, 156 Ariz. at 214, 751 P.2d at 530. Elizabeth "not only lost the use of the money when the carrier failed to pay the award, but also the 'time-value' of the money." *Id.* Under § 44-1201(A), Elizabeth is due interest on her death-benefits award pursuant to § 23-1046(A) from the date Pinnacle received notice of her claim. *See Tisdel,* 156 Ariz. at 213, 751 P.2d at 529; *see also DKI*, 173 Ariz. at 539, 845 P.2d at 465.

## Disposition

**¶23** For the foregoing reasons, the ALJ's award denying Elizabeth relief is set aside.

H O W A R D, Judge, specially concurring:

**¶24** The majority correctly concludes that Elizabeth was entitled to interest from the date Pinnacle received her notice for death benefits. I write separately because I disagree with part of the majority's analysis. The majority states this case is similar to *DKI* in that a claim for death benefits "does not create an obligation to pay benefits" unless the carrier acknowledges the obligation or the claimant establishes to the Commission that the death was related to the decedent's employment. *DKI*, 173 Ariz. at 537, 845 P.2d at 463; *supra* ¶ 14. It then states it was the ALJ, and not § 23-1046(A), that determined Elizabeth was entitled to death benefits. *Supra* ¶¶ 14-15. The majority goes on to determine "the death benefits Elizabeth was awarded [by the ALJ] were liquidated and constituted a legal indebtedness or other obligation to pay." *Id.* But it then determines

interest begins to run from the date Pinnacle received Elizabeth's notice of the claim, and not the date of the ALJ's award. *Supra* ¶ 18. The majority thus seems to conclude that although Pinnacle had no obligation to pay Elizabeth until the ALJ issued its award, the fact that the amount of the award was liquidated controls the date from which interest began to accrue.

**¶25** *DKI* sets for the test for when interest accrues under § 44-1201: "interest only begins to accrue when (1) there is a legal 'indebtedness . . . or other obligation' to pay benefits *and* (2) when the carrier has 'notice of [this] obligation to pay.'" 173 Ariz. at 537, 845 P.2d at 463, *quoting Tisdel*, 156 Ariz. at 213, 751 P.2d at 529 (alterations in *DKI*). The court in *DKI* further noted that a legal indebtedness or other obligation, which allows for the recovery of interest, arises only if the claim is "liquidated," i.e., "set forth in an award, notice of claim status, or . . . otherwise." *Id.* at 538-39, 845 P.2d at 464-65. Put another way, if the claim "'makes it possible to compute the amount with exactness, without reliance upon opinion or discretion,'" then a legal obligation exists which triggers the accrual of interest. *Id.* at 538, 845 P.2d at 464, *quoting La Paz County*, 153 Ariz. at 168, 735 P.2d at 778.

**¶26** Elizabeth's entitlement to interest, consequently, depends on, first, whether § 23-1046(A) creates a liquidated legal indebtedness or other obligation and, second, when a carrier has notice of that obligation. *See id.* at 537, 845 P.2d at 463. As for the first requirement, the amount of death benefits Elizabeth was owed is set by statute based on Charles's average monthly wage which is "susceptible to mathematical computation and applied to the statutory payment schedule." *See DKI*, 173 Ariz. at 538, 845 P.2d at 464; § 23-1046(A)(2). This schedule is similar to the permanent partial disability benefits paid pursuant to A.R.S. § 23-1047(A). § 23-1046(A)(2); *see also* A.R.S. § 23-1044(B). Thus, Elizabeth's claim was liquidated at the time it was filed and therefore constituted a legal indebtedness or other obligation to pay. *See DKI*, 173 Ariz. at 539, 845 P.2d at 465.

**¶27** The majority determines that enforcement through an award was necessary to trigger Pinnacle's legal obligation. *Supra* ¶ 14. But in a similar context, we have stated that a statute can

create a legal obligation which exists notwithstanding any action to enforce it. In *Desert Mountain Properties Ltd. Partnership v. Liberty Mutual Fire Insurance Co.*, this court was asked to interpret the phrase "legal obligation to pay," which was found in an insurance contract but was not defined in that contract. 225 Ariz. 194, ¶¶ 13, 17, 236 P.3d 421, 427-28 (App. 2010). The court determined that:

> The language in the [insurance] policies may be interpreted according to its plain and ordinary meaning, as one untrained in law or business would understand it. Reading the policies in that manner, a "legal obligation to pay" means any obligation enforceable by law, including, for example, an obligation created by statute, contract or the common law. Once created, the obligation exists prior to and even in the absence of a suit to enforce it or a court order compelling performance.
>
> In short, although a court may *enforce* a legal obligation, in the usual case, no court action is required to *create* a legal obligation. For that reason, we conclude the better-reasoned rule is that coverage for sums an insured becomes "legally obligated to pay as damages" may be triggered even in the absence of a civil lawsuit against the insured or a court order requiring the insured to make payment.

*Id.* ¶¶ 17-18. This analysis of "legal obligation" applies to our case with equal force.

¶28        Section 23-1046(A), by setting forth a mathematical formula for determining the exact amount of benefits due, created Pinnacle's obligation to pay Elizabeth "prior to and even in absence of" Pinnacle's decision to contest the cause of Charles's death.

*Id.* ¶ 17. The fact that an ALJ's award was required to enforce Pinnacle's obligation does not change the fact that § 23-1046(A) created the obligation once it received Elizabeth's claim. *See Desert Mountain Props.*, 225 Ariz. 194, ¶ 18, 236 P.3d at 428; *see also La Paz County*, 153 Ariz. at 168, 735 P.2d at 778. The ALJ's "determination did not change the nature of the [death] from nonindustrial to industrial. Instead, the [ALJ] corrected an error made by [Pinnacle] . . . in characterizing" the cause of Charles's death. *Boehm & Associates v. Workers' Comp. Appeals Bd.*, 90 Cal. Rptr. 2d 486, 488 (Ct. App. 1999).

**¶29**       As for whether the carrier had notice, § 23-1046(A) does not contain the same provision as § 23-1047(A), on which *Tisdel* was based, allowing the carrier to begin payments without waiting for a determination by the Commission. It does, however, provide that, after an injury causing death, compensation known as a death benefit "shall be payable in the amount, for the period, and to and for the benefit of . . . the surviving spouse." § 23-1046(A). Additionally, a carrier may always begin paying a claimant's compensation without a determination from the Commission under § 23-1061(G). Thus, under § 23-1046(A), Elizabeth became entitled to the death benefits from the time of Charles's death once she timely filed her notice of claim with the Commission. A.R.S. § 23-1061(A); § 23-1046(A). Unlike a petition to reopen under § 23-1061(H), § 23-1046(A) does not require any further action from the Commission for the payment of the death benefits to begin; it simply states the benefits "shall be payable." And death benefits under § 23-1046(A) are not one of the enumerated benefits requiring additional action by the Commission under § 23-1047(A).[4] A carrier

---

[4]Although death benefits pursuant to § 23-1046(A) do not require further action by the Commission, the same is not true for death benefits pursuant to § 23-1046(B). Section 23-1046(B) applies when the decedent "leaves dependents only partially dependent upon his earnings for support." For death benefits falling under that subsection, the "insurance carrier within thirty days shall notify the commission and request that the claim be examined and further compensation, if any, be determined." § 23-1047(A). This provision was not applicable to Elizabeth's claim because she is Charles's

is therefore put on notice that benefits are due once it receives a claim filed pursuant to § 23-1046(A). *See Tisdel*, 156 Ariz. at 213, 751 P.2d at 529; *DKI*, 173 Ariz. at 537, 845 P.2d at 463.

**¶30** Under *DKI*'s two-step test for determining whether interest is due, death benefits pursuant to § 23-1046(A) satisfy both requirements. *See DKI*, 173 Ariz. at 537, 845 P.2d at 463. First, § 23-1046(A)(2) provides an exact formula for computation of the amount of the death benefits Elizabeth was entitled to receive, so the claim was liquidated at the time of Charles's death and therefore created a legal obligation. *See DKI*, 173 Ariz. at 539, 845 P.2d at 465; *see also La Paz County*, 153 Ariz. at 168, 735 P.2d at 778; *Desert Mountain Props.*, 225 Ariz. ¶¶ 17-18, 236 P.3d at 428. And, second, because § 23-1046(A) does not require any action by the Commission for the death benefits to become due and payable, Pinnacle had notice of this obligation. Accordingly, Elizabeth was owed a liquidated legal indebtedness or other obligation upon Charles's death and Pinnacle had notice of its obligation upon receipt of Elizabeth's claim. The benefits therefore were not timely paid and interest on Elizabeth's death benefits began to accrue once Pinnacle received her claim. *Tisdel*, 156 Ariz. at 212-13, 751 P.2d at 528-29; *DKI*, 173 Ariz. at 537, 845 P.2d at 463.

---

surviving spouse, and neither party has argued that it would apply to this situation. *See* § 23-1046(A).